IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CR-231-TCB-CMS |
| | ) | |
| JACK FISHER | ) | |

### UNITED STATES' RESPONSE
### OPPOSING JACK FISHER'S OBJECTIONS TO THE
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [385, 386]

The United States of America, through its undersigned attorneys, responds

in opposition to Defendant Jack Fisher's objections, ECF No. 385 & 386, to the

magistrate judge's report recommending that the Court deny Fisher's motion to

suppress. The magistrate judge's report and recommendation ("R&R"), ECF No.

352 (under seal), correctly concluded that Fisher's arguments lacked merit. Thus,

the United States respectfully asks the Court to overrule Fisher's objections.

### FACTUAL BACKGROUND

During its investigation of Jack Fisher and his conspirators, the government

executed three search warrants that Fisher now challenges. The first was a warrant

obtained in the Western District of North Carolina for certain email accounts

controlled by Microsoft ("Microsoft Warrant"). *See* ECF No. 120-4. The second and

third warrants were obtained in the Northern District of Georgia and sought to

search premises identified as 11675 Rainwater Drive, Suite 220, Alpharetta,

Georgia ("Rainwater Drive Warrant"), ECF No. 120-2, and 750 Hammond Drive, Building 17, Atlanta, Georgia ("Hammond Drive Warrant"), ECF No. 120-3. The R&R describes the documents Fisher seeks to suppress. *See* ECF No. 352 at 2.

## PROCEDURAL BACKGROUND

On February 24, 2022, a grand jury returned a 135-count first superseding indictment against Fisher and his six conspirators. ECF No. 28. The defendants illegally organized, promoted, and sold abusive tax shelters. Through these tax shelters, high-income taxpayers claimed unwarranted and inflated charitable contribution tax deductions based on the donation of a conservation easement.

On April 8, 2022, Fisher moved to suppress certain evidence seized pursuant to the three search warrants. ECF No. 119 (under seal); ECF No. 120; ECF No. 240 (supplement on standing).[1] The government responded, ECF No. 261 (under seal), and Fisher replied. ECF No. 269; ECF No. 270 (under seal).

The magistrate judge issued an R&R on November 22, 2022. After an extension of time, *see* ECF No. 366, Fisher filed his objections. ECF No. 385 (under seal); ECF No. 386. The Court ordered the government to respond by January 3, 2023. ECF No. 366 at 1. Fisher raises five objections to the R&R. ECF No. 386 at 1.

---

[1] Fisher's co-defendant, James Sinnott, also filed a motion to suppress. ECF No. 122. The magistrate judge held a hearing related to Sinnott's motion to suppress, which overlapped, in part, with Fisher's motion to suppress evidence seized during the execution of the Rainwater Drive Warrant.

None should persuade the Court. Thus, upon review, this Court should overrule Fisher's objections and deny his motion to suppress.

**LEGAL STANDARD**

## I.     Standard of review for an R&R resolving a motion to suppress

A district judge may refer a motion to suppress evidence to a magistrate judge. Fed. R. Crim. P. 59(b)(1). After the magistrate judge issues her R&R, a party may file written objections to the proposed findings and recommendations. Fed. R. Crim. P. 59(b)(2). "The district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3).

## II.    Legal standard for suppression motions

To succeed on a motion to suppress evidence, Fisher must show that a Fourth Amendment violation occurred. *See, e.g.*, *United States v. Taylor*, 935 F.3d 1279, 1281–82 (11th Cir. 2019) (describing the two-step process for considering a defendant's motion to suppress). In other words, the search or seizure must be shown to be unreasonable. *See Herring v. United States*, 555 U.S. 135, 139 (2009).

If a defendant shows that a search was unreasonable, he must further show the propriety of applying the exclusionary rule. *Id.* The exclusionary rule does not create "a personal constitutional right," *Taylor*, 935 F.3d at 1289, and is a measure of "last resort." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). Its "*sole* purpose … is to deter misconduct by law enforcement." *Davis v. United States*, 564 U.S. 229, 246

3

(2011). Thus, a court should "decline to suppress evidence when suppression would not further the [exclusionary] rule's deterrent purpose." *United States v. Morales*, 987 F.3d 966, 973 (11th Cir. 2021) (citing cases). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144.

## ARGUMENT

The searches and seizures attending the execution of the Microsoft, Rainwater Drive, and Hammond Drive Warrants were reasonable. Thus, no Fourth Amendment violation occurred. This Court should therefore overrule Fisher's objections and deny his motion to suppress.

## I.     The government timely executed the Microsoft Warrant.

Fisher's first objection is that the government allegedly conducted a "second seizure" of emails from Microsoft after the government could not access Microsoft's initial production. ECF No. 386 at 2–8. An evidentiary hearing was held in the Western District of North Carolina, and no fact is in dispute. ECF No. 352 at 10; *see also* ECF No. 261 at 8.

Fisher explains that the Microsoft Warrant was issued on November 13, 2019, and that "the seizing agents *complied with that deadline*." ECF No. 120-1 at 6 (noting execution of warrant within two hours of issuance) (emphasis added); *see*

4

*also* ECF No. 386 at 3 ("[T]he warrant required that the warrant be executed within 14 days. … The government abided by that instruction and executed the warrant the same day it was issued."). Thus, well within the fourteen-day period required by Fed. R. Crim. P. 41(e)(2), the agents executed the Microsoft Warrant.

Although Microsoft timely provided responsive electronic records to the government, due to technical incompatibility, the government was unable to successfully retrieve the information. ECF No. 352 at 10. Microsoft then provided the same information through a different format. *Id.*; ECF No. 261 at 8. This "unremarkable difficulty in processing and reviewing the data that was already properly seized" is not a second seizure. *See* ECF No. 352 at 11. Indeed, courts have not required a second warrant to search properly seized property when the evidence obtained in the search did not exceed the probable cause set forth in the original warrant. *See, e.g., United States v. Gregoire*, 638 F.3d 962, 967–68 (8th Cir. 2011); *United States v. Grimmett*, 439 F.3d 1263, 1268–69 (10th Cir. 2006). By modifying the vehicle by which Microsoft produced the seized emails to the government, the government did not re-execute the warrant. "Rather, it is more akin to a 'later off-site copying or review' of electronic information, which Rule 41 expressly authorizes." ECF No. 352 at 11 (citing Fed. R. Crim. P. 41(e)(2)(B)).[2]

---

[2] Fisher argues that the R&R flouts the Eleventh Circuit's statement in *United States v. Gerber*, 994 F.2d 1556, 1561 n.4 (11th Cir. 1993), that the court was not creating "a

## II.   There was no Fourth Amendment violation when executing the Hammond Drive Warrant.

Fisher's second objection is that corporate entities other than AgeeFisherBarrett ("AFB") operated out of the Hammond Drive location, so the government's search was unreasonable. *See* ECF No. 386 at 8–12. The Court should reject Fisher's second objection because the magistrate judge correctly found that the search of the Hammond Drive location did not exceed the warrant's scope. Alternatively, the Court should reject Fisher's objection because it flows from a faulty legal premise.[3]

### A.  The search did not exceed the scope of the Hammond Drive warrant.

The magistrate judge correctly concluded that the executing agents' search of the Hammond Drive location complied with the warrant. Fisher's attempted

---

precedent for careless attention to the acquisition of warrants, including their duration." ECF No. 386 at 8. None of the undisputed facts suggest that the agents were careless about the acquisition of the warrant or its duration. In fact, as Fisher concedes, the agents were *especially* careful regarding the duration of the warrant and executed the warrant within mere hours of its issuance.

[3] Fisher's argument relies on the magistrate judge's legal conclusion that a warrant's references to a corporate entity in its caption or property description limit the physical parameters of the location to be searched. Thus, the magistrate judge held that the Hammond Drive Warrant was limited to the search of only one entity at 750 Hammond Drive, Building 17. *See* ECF No. 352 at 13 n.5. The government extensively briefed a similar issue for Sinnott's motion to suppress. *See* ECF No. 228 at 7–16 (under seal).

factual distinctions should not persuade the Court, so the Court should overrule Fisher's second objection to the R&R.

Fisher's references to corporate entities with an office at 750 Hammond Drive, Building 17, show only that, in his own mind, he intermingled multiple corporate entities at several office locations while perpetrating the crimes with which he is charged. *Cf.* ECF No. 386 at 10. Indeed, the "Fisher" of "Agee, Fisher, Barrett" was Defendant Jack Fisher. *See* ECF No. 352 at 13. He maintained an office at his former company's location even though he was no longer employed at AFB. He involved his former company, AFB, and its employees in his ongoing criminal conduct and maintained records at the Hammond Drive location that were the subject of the search warrant. He even used AFB administrative personnel to conduct business whenever he happened to conduct business out of the AFB office location.

Moreover, it is undisputed that the sign outside 750 Hammond Drive, Building 17, did not indicate the presence of any other businesses operating from the Hammond Drive location, other than AFB. ECF No. 386 at 9. Fisher also does not dispute that his office within AFB was unmarked. *Cf.* ECF No. 352 at 14; ECF No. 386 at 11. His only claim is that the government knew that other entities associated with him or his scheme were run out of 750 Hammond Drive, Building 17; he does *not* claim that the government knew *which* office the other entities were

purportedly operating out of. ECF No. 386 at 10.  But presented with little more than an unmarked office, there would be no reason for an executing agent to know that a different corporate entity was run out of any particular office within 750 Hammond Drive, Building 17. ECF No. 352 at 13–14.  Thus, Fisher's objection fails.

   B. Fisher's objection rests on a faulty legal premise.

   Alternatively, Fisher's objection rests on the faulty legal premise that the government obtained a warrant to search a particular entity—AgeeFisherBarrett, LLC. *See* ECF No. 386 at 8 (arguing that the government obtained "a warrant to search 'AgeeFisherBarrett, LLC'" but "went outside of that scope and searched *other entities* at that address[.]" (emphasis added)); *see id.* at 11. But the government did not obtain a warrant to search an *entity*, it obtained a warrant to search a *location*.

   A warrant supported by probable cause is reasonable if it "particularly describ[es] the place to be searched[.]" U.S. Const. amend. IV. A search warrant sufficiently describes the premises to be searched "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *United States v. Ellis*, 971 F.2d 701, 703 (11th Cir. 1992) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). Here, the Hammond Drive Warrant authorized the government to search 750 Hammond Drive, Building 17:

AgeeFisherBarrett, LLC
750 Hammond Drive
Building 17
Atlanta, Georgia, 30328
more particularly described in Attachment A that is hereby
incorporated by reference

ECF No. 120-3 at 2 (caption and property description). Attachment A more

particularly described the location: "**TARGET LOCATION 1** is identified as 750

Hammond Drive, Building 17, Atlanta, Georgia, 30328." *Id.* at 3. Attachment A

then described the physical characteristics of the location to be searched, including

an "AgeeFisherBarrett" sign out front:

> **TARGET LOCATION 1** is identified as 750 Hammond Drive Building 17, Atlanta, Georgia, 30328. 750 Hammond Drive, Building 17, is a three-story, red brick commercial office space, located in an office complex with similar buildings. A sign in front of the building reads "AgeeFisherBarrett" and it appears to be the only occupant of the building. A set of stairs leads up to a bluish-grey front door. The door leads to a reception area for the accounting firm. The building appears as follows:

*Id.* Similarly, the affidavit in support sought to establish "probable cause in

support of a search warrant for: 750 Hammond Drive Building 17, Atlanta,

Georgia, 30328 ("**TARGET LOCATION 1**")[.]" ECF No. 120-6 at ¶ 2; *cf. id.* ¶ 4a.

The warrant describes the property "such that the officer with a search

warrant can with reasonable effort ascertain and identify the place intended."

*Steele*, 267 U.S. at 503. Indeed, courts have found that similar descriptions of places

to be searched were sufficient. *See, e.g.*, *United States v. Brown*, 822 F. Supp. 750, 754 (M.D. Ga. 1993) (permitting search of a yard when only the house was described in the warrant). Moreover, courts have upheld search warrants even when they list the *wrong* address—a situation much further afield than the one presented here. *See, e.g.*, *United States v. Burke*, 784 F.2d 1090, 1092–93 (11th Cir. 1986); *United States v. Graham*, 476 F. App'x 839, 841 (11th Cir. 2012). Agents searched only the location particularly described in the warrant: 750 Hammond Drive, Building 17.

Even though the executing officers indisputably searched exactly the premises described by the Hammond Drive Warrant, Fisher argues that references to AFB limited the physical scope of the search. He concludes that law enforcement could not search any other business that may have occupied the premises particularly described by the warrants. *Id.*[4] This argument has at least three flaws.

First, Fisher ignores the plain terms of the search warrant and adopts a hypertechnical reading. In executing and interpreting the language of a search warrant, "[p]lain reading and common sense" govern because "there is no room in the midst of a criminal investigation for hypertechnical reading or interpretation of a search warrant." *Brown*, 822 F. Supp. at 754 (citing *United States v. Napoli*, 530

---

[4] Fisher's Hammond Drive suppression arguments are limited solely to items seized from an office he occupied within 750 Hammond Drive, Building 17. *See* ECF No. 120 at 13.

F.2d 1198, 1199 (5th Cir. 1976))[5]; *see also United States v. Gorman*, 104, F.3d 272, 275 (9th Cir. 1996). The standard "is one of practical accuracy rather than technical nicety." *United States v. Betancourt*, 734 F.2d 750, 755 (11th Cir. 1984) (quoting *United States v. Johnson*, 541 F.2d 1311, 1313 8th Cir. 1976)). Here, from a practical, common-sense reading, the Hammond Drive Warrant authorized the government to search all of Building 17.

This common-sense reading leads to the second flaw in Fisher's argument. The search warrant authorized the search of a *location*; it was not the search of a person or corporate entity. A warrant must "identify the *person* or *property* to be searched[.]" Fed. R. Crim. P. 41(e)(2)(A) (emphasis added). The warrant clearly identify *property*—750 Hammond Drive, Building 17. *See* ECF No. 120-3 at 2 (describing the affiant's belief that "on the property described" evidence of a crime would be found); *id.* at 3 (Attachment A describing the "Property to be Searched" at "TARGET LOCATION 1"). Fisher wants to treat the warrants as if they authorized the search of a person—the corporate entity AFB. *See, e.g.*, ECF No. 386 at 8; *id.* at 11 (maintaining that the magistrate judge found that the Rainwater Drive Warrant "did not authorize a search of an address, it authorized the search only of

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981.

an entity"). But the target of the warrant was property, a certain location—one explicitly identified as 750 Hammond Drive, Building 17. *Id.* at 3

Third, Fisher's entity-based argument fails because the warrants' references to AFB were merely descriptive. For example, in *United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011), the defense argued that law enforcement had exceeded the scope of the warrant. The warrant authorized law enforcement to search specifically defined premises. As part of the description, the warrant noted that the outside of the building had a sign displaying "SERATECH." The agents searched the entire building, not just the offices specifically housing Seratech. The Eleventh Circuit found that the "warrant's invocation of Seratech merely described the building to be searched. It did <u>not</u> restrict the agents' search to the premises known as or controlled by Seratech." *Id.* So too here. At most, the reference to AFB in the warrant is analogous to the *Bradley* warrant's reference to Seratech on the wall of the building. A common-sense reading of the warrant shows that it did not restrict the agents' search within Building 17 to the premises known as or controlled only by AFB. *See* ECF No. 120-3 at ¶ 2 (seeking "a search warrant for: 750 Hammond Drive Building 17, Atlanta, Georgia, 30328 ("**TARGET LOCATION 1**")).

Fourth, applying the rule suggested by Fisher's objections would produce absurd results in situations involving multiple corporate entities occupying a

single office space. Under Fisher's theory, a person within a location covered by a search warrant could claim that he or she worked for a corporate entity different from the one listed on the warrant and thus thwart the search of his or her office. Such a rule would encourage criminal wrongdoers to follow the model of Fisher and his conspirators: establish multiple corporate entities at a single address, hope the government lists only one entity, or omits an entity in the descriptor in the warrant, and then argue that the government somehow exceeded the scope of a location-based warrant by entering an office of an entity not specifically listed in that warrant. Neither the Fourth Amendment nor any case require this outcome.

For all these reasons, the Court should not adopt the faulty legal premise on which Fisher's objection hinges.

## III.   The initial seizures were particularized.

Fisher's third objection challenges the two-step search of email accounts and electronic devices in the warrants because, he contends, the warrants constituted an unconstitutional general warrant lacking particularity. ECF No. 386 at 12–17. Fisher made three arguments challenging the two-step search in his motion. *See* ECF No. 352 at 14–15 (listing bases). His current objection abandons the first two of those bases and challenges only the third: the breadth and particularity of the step-one seizures. *Cf.* ECF No. 386 at 12–17. The objection rests primarily on *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017). *Id.* at 14–17. The magistrate judge

13

properly distinguished *Blake* and correctly determined that the items to be seized by the search warrants were sufficiently particularized.[6]

To avoid unconstitutional general warrants, a warrant for electronically stored information must include "a particular description of the things to be seized." *United States v. Blake*, 868 F.3d at 973 (citation and internal marks omitted). The three warrants in this case did just that.

Fisher first suggests that the Microsoft Warrant was not sufficiently particularized because it authorized the seizure of seven full email accounts and corresponding data. ECF No. 386 at 15–16. Similarly, Fisher argues that the Rainwater Drive and Hammond Drive Warrants were not sufficiently particularized because they permitted the government to image entire electronic devices on the premises, which allowed for all data on the devices to be seized. *Id.* at 16–17.[7]

---

[6] Fisher suggests that the magistrate judge "did not apply *Blake*" and instead "cited a district court case" to "supersede an Eleventh Circuit decision." ECF No. 386 at 15. This is untrue. The magistrate judge distinguished *Blake* based on the facts of this case and pointed to district court decisions in the Eleventh Circuit that applied and explained the scope of *Blake*'s holding. *See* ECF No. 352 at 19.

[7] Fisher claims that "[a] warrant must limit the imaging of electronic files to particular files." ECF No. 386 at 17. The case he cites, *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005), considered a warrant that "was not limited to any particular files, or to any particular federal crime." Because the warrant permitted the government to "search for anything—from child pornography to tax returns to private correspondence," the court in *Riccardi* found the warrant violated the

But courts in this District have rejected Fisher's *Blake*-based argument because "the weight of authority supports the conclusion that a warrant that requires a disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable." *United States v. Lee*, No. 1:14-cr-227-TCB-2, 2015 WL 5667102, at *3 (N.D. Ga. Sept. 25, 2015) (collecting cases); *see also United States v. Addaquay*, No. 1:20cr-126-LMM-JSA-1, 2021 WL 1541051, at *4 (N.D. Ga. Apr. 20, 2021) ("Federal courts in this circuit and others, both before and after *Blake*, routinely uphold warrants requiring production of all information associated with a computer hard drive or email account in the face of challenges based on the particularity requirement, so long as the warrant limits seizure to relevant evidence." (internal marks and citation omitted) (collecting cases)); *United States v. Chrisley*, No. 1:19-CR-297-ELR-JSA, 2021 WL 7286226, at *6 (N.D. Ga. Aug. 31, 2021) (finding that two-step warrants are permissible and recommending that the government include date restrictions).

The Microsoft Warrant precisely described the information for Microsoft to produce and the information to be seized and retained by the government. *See* ECF No. 120-4 at 5–7. And the Rainwater Drive and Hammond Drive Warrants particularly described the information to be seized and retained. *See* ECF No. 120-

---

Fourth Amendment. *Id.* Here, the warrants specified the particular federal crimes for which evidence was sought, so *Riccardi* is clearly inapplicable.

2 at 6–7 (Rainwater Drive Warrant); ECF No. 120-3 at 6–8 (Hammond Drive Warrant); *cf. Lee*, 2015 WL 5667102, at *1 (describing the attachments to the warrants, which are substantially similar to those at issue here); *Chrisley*, 2021 WL 7286226, at *1 (similar).

In any event, *Blake*'s reasoning supports a finding of particularity in this case. In *Blake*, the government sought limited categories of emails, but did *not* include a time limitation. *Cf.* 868 F.3d at 966, 973 n.7. The lack of a time limitation, however, did not render the otherwise limited warrant unconstitutional. The three warrants at issue here are similar, but the reverse. Even though the Microsoft Warrant sought *all* the emails and data for the seven email accounts, it included a time limitation—from January 1, 2013, through the date of the warrant. *See* ECF No. 120-4 at 4. The Rainwater Drive and Hammond Drive Warrants incorporated by reference a time limitation from January 2008 to the time of the warrants' execution. *See* ECF No. 120-2 at 6 (incorporating the "categories set forth in Section A" of Attachment B); ECF No. 120-3 at 6 (same). As such, just like the warrant in *Blake*, the warrants at issue here are constitutional.

Moreover, even if Fisher's objection had merit (which it does not), a court in this District recently explained that, when law enforcement relies on an authorized two-step warrant, suppression is appropriate only "if the procedure was so clearly invalid as to vitiate good faith reliance on the warrant." *Chrisley*, 2021 WL 7286226,

at *4. The executing officers had every reason to rely in good faith on the warrants issued given the facial validity of the procedure laid out in the warrants.

## IV. The government's previous *de minimis* breaches of the filter protocol do not justify suppressing the seized materials.

Fisher's fourth objection is that the magistrate judge failed to provide a remedy for the government's prior, minor breaches of the filter protocol. ECF No. 386 at 17–20. Fisher argues that all documents and items seized pursuant to the execution of the Rainwater Drive, Hammond Drive, and Microsoft Warrants should be suppressed because the United States inadvertently breached the filter protocol that applied to the Rainwater Drive Warrant. *See* ECF No. 120 at 1; ECF No. 119 at 1–5.

As the magistrate judge noted, the district judge in the Western District of North Carolina who approved the filter protocols and first addressed the breaches "described those breaches as 'minor' and '*de minimis*,' and he noted that the breaches did not prejudice ICM in any way." ECF No. 352 at 9 (citing District Judge Reidinger's order, 1:22-cv-2802, ECF No. 83 (N.D. Ga.)). The magistrate judge noted this fact in her R&R, and Fisher does not dispute it. *See* ECF No. 352 at 9 n.4.

As Fisher admits, this Court "has previously heard argument regarding this issue in a related matter." ECF No. 386 at 17 n.8. Indeed, not only has this Court heard argument on this issue, but also it rejected Fisher's position. ██████

████████████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████

Contrary to Fisher's assertion, the government carefully and deliberately follows courts' orders and takes its obligations regarding a party's privilege seriously. *See* ECF No. 352 at 9 (the magistrate judge noting that she had no reason to believe the government takes its obligations lightly or considers itself free to ignore orders of the court). Indeed, in that separate proceeding, Fisher's counsel did ████████████████████████████████████████

█████████████████████████████████████████

████████████████████████ For these reasons, the Court should overrule Fisher's objection to the R&R based on the government's *de minimis* breaches of the filter protocol.

## V.     The search warrant affidavits sufficiently alleged crimes.

Adamant that his conduct was not criminal, Fisher recycles previous arguments challenging the illegality of his conduct and argues that the search warrant affidavits lacked probable cause of a federal crime. ECF No. 386 at 20–25. In his motion to suppress, Fisher argued that the economic substance doctrine "is not relevant to charitable donation transactions." ECF No. 120-1 at 23. Fisher's

objections contend not that the economic substance doctrine is irrelevant but that the charitable contribution of land itself is the non-tax purpose, so "no further economic substance is required." ECF No. 386 at 21.[8] This argument fails.

Fisher's economic substance doctrine argument focuses on only one of two mandatory prongs of the economic substance doctrine. A transaction has economic substance "only if—(A) the transaction changes in a meaningful way (apart from Federal income tax effects) the taxpayer's economic position, and (B) the taxpayer has a substantial purpose (apart from Federal income tax effects) for entering into such transaction." 26 U.S.C. § 7701(o). Thus, if one of these prongs is not met, then the transaction is disregarded for tax purposes. *See UPS of Am., Inc. v. Comm'r*, 254 F.3d 1014, 1018 (11th Cir. 2001).

Here, Fisher's argument that the donation of land is a non-tax purpose relates only to the substantial purpose prong.[9] Regardless, in each of Fisher's funds, the taxpayer's economic position was *not* changed in a "meaningful way"

---

[8] Fisher says that the magistrate judge "accepted that point" about economic substance. ECF No. 386 at 22 (citing ECF No. 352 at 21). This is false. Because the R&R ignores Fisher's argument on "that point" and rules on alternative grounds, nothing in the R&R can be read to suggest that the magistrate judge accepted Fisher's economic substance doctrine argument.

[9] Whether any of the participants in Fisher's scheme had the donation of land—rather than obtaining a tax deduction—as his or her substantial purpose is a question of fact.

other than the purchase and receipt of a tax deduction. *See* 26 U.S.C. § 7701(o)(A). Thus, even setting aside that Fisher's argument is a fact-based one, his position still fails to satisfy the economic substance doctrine.[10] The search warrant affidavit thus sufficiently alleged probable cause that Fisher and others committed a crime.[11]

In the alternative, Fisher argues that the magistrate judge relied merely on conclusory statements from the affidavit about Fisher's practice of obtaining grossly inflated appraisals and directing participants to illegally backdate

---

[10] The second reason that Fisher's argument fails is explained in the government's response to Fisher's motion to dismiss. *See* ECF No. 276 at 12–18. Fisher takes too narrow of a view of the economic substance doctrine as it is applied to his tax shelters. Fisher points to only one component of the entire transaction—the conservation easement itself—to argue that the tax shelters have economic substance. *See* ECF No. 386 at 20–22; *see also* ECF No. 120-1 at 23–24 (Fisher's motion to dismiss citing similar cases); ECF No. 311 at 25–27 (explaining Fisher's misconception of these cases). But the affidavit did not contend that the *donations* lacked economic substance, but rather that the purchase of membership units in the tax shelter lacked economic substance and constituted only the naked purchase of tax deductions. *See, e.g.*, ECF No. 120-7 at ¶¶ 28–29.

[11] Fisher also misconstrues the Court's order on his motion to dismiss in support of his economic substance doctrine argument. *See* ECF No. 386 at 21 n.9 (citing ECF No. 311). Fisher suggests that the Court found that whether the law was too uncertain to sustain a conviction was a jury question. *Id.* This is incorrect. *See* ECF No. 365 at 2–3, 9–12. The Court found that Fisher's *state of mind* (i.e., his subjective belief) regarding the law is one for the jury to determine. Otherwise, the law is the province of the Court, not the jury. *See id.*

documents. ECF No. 386 at 23–25.[12] But that argument is spurious: The paragraphs cited by the magistrate judge contained *factual* allegations about Fisher's wrongdoing. *See* ECF No. 352 at 21; *see also* ECF No. 120-6 at ¶ 31[13] (reporting the statement by two confidential informants who participated in Fisher's scheme about how Fisher obtained grossly inflated appraisals); *id.* ¶ 87 (containing a statement between a confidential informant and Fisher's conspirator, Stein Agee, who pleaded guilty separately, about signing backdated documents); *id.* ¶¶ 106–07 (factual allegations about Fisher telling an undercover agent that he would send the undercover agent a subscription package to backdate materials).

Moreover, the citations relied on by the magistrate judge are mere examples of the factual allegations in the affidavit that supported the finding of probable cause to conduct the search. *See id.* ¶ 67 (detailing an email from Fisher to his co-defendant and appraiser, Terry Roberts, about editing an appraisal); *id.* ¶ 68 (allegation that Fisher's estimate of the value six months before the final appraisal was nearly identical to the final value reached by the appraiser); *id.* ¶¶ 102–03

---

[12] Before the magistrate judge, Fisher relied solely on his flawed economic substance doctrine argument. Even so, the magistrate judge ruled on the alternative ground that the affidavit, at minimum, sufficiently alleged that Fisher fraudulently obtained grossly inflated appraisals and directed participants to illegally backdate documents.

[13] The magistrate judge cited the sealed version of a search warrant affidavit, ECF No. 119-5. That document is the same as the publicly filed version, ECF No. 120-6.

(Fisher's statements to undercover agents about papering the file with voluminous paperwork to support the inflated appraisal amount).

Fisher similarly argues that the magistrate judge's reliance on the affidavit's allegations about illegal backdating was misplaced. *See* ECF No. 352 at 21. He argues, based on the affidavit, that the "year of deduction is the year the deed of conservation easement is recorded." ECF No. 386 at 25. In other words, Fisher contends that illegally backdated documents are not problematic because (perhaps) the deed of the conservation easement was recorded in the same year the deduction was claimed. This argument is seriously flawed because it does not get around the fact that Fisher directed participants to backdate documents to appear to have joined the *partnership* before the end of the previous year. *E.g.*, ECF No. 120-6 at ¶¶ 105–06.[14] The Court should overrule this baseless objection.

## VI. The exclusionary rule should not be applied

Even if the Court agrees with Fisher's objections, that is not the end of the matter. If Fisher shows a Fourth Amendment violation (he has not), then he must also show that application of the exclusionary rule is appropriate. *Herring*, 55 U.S. at 139, 144. Suppression does not deter future Fourth Amendment violations—and is therefore inappropriate—"when an officer acting with objective good faith has

---

[14] Nor does Fisher's argument address the affidavit's factual allegations about his attempts to have a confidential informant sign backdated purchase agreements four years after the purported sale of land. ECF No. 120-6 at ¶¶ 84, 86–87.

obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984); *see also United States v. Martin*, 297 F.32d 1308, 1313 (11th Cir. 2002).

The government bears the burden of showing that *Leon*'s good-faith exception applies. *United States v. Travers*, 233 F.3d 1327, 1331 n.2 (11th Cir. 2000); *Morales*, 987 F.3d at 974. Searches conducted pursuant to a warrant "will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 1296.

*Leon*'s good-faith exception applies in all but four limited circumstances. *See Martin*, 297 F.3d at 1313. A court should deny a motion to suppress unless one of the four limited sets of circumstances is present. *Leon*'s good-faith exception means that evidence must be suppressed "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926; *see Martin*, 297 F.3d at 1313 (same).

Nothing in the record suggests that the officers' reliance on the warrants was objectively unreasonable, so *Leon*'s good-faith exception to the exclusionary rule should foreclose the suppression of the evidence. Here, "[t]he officers did everything they should have." *Morales*, 987 F.3d at 974. They sought, obtained, and

relied on search warrants from a neutral magistrate—the gold standard of complying with the Fourth Amendment's protections. *See id.* Law enforcement provided ample probable cause in the affidavits and had no reason to think probable cause was absent from the magistrate's authorization; they did not mislead the magistrate; they did not withhold material information from the magistrate; and they searched only the locations particularly described in the warrants. *See id.* Based on the information available to officers at the time of the searches, a reasonably well-trained officer would have believed that the searches were legal. *Cf. id.* (citing *Martin*, 297 F.3d at 1318); *see also United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003) (applying the good-faith exception even though the affidavit lacked probable cause).

Thus, there is no basis to suppress the evidence seized, and doing so "would do nothing to deter future police misconduct." *Morales*, 987 F.3d at 974. All suppression would do "is prevent a factfinder from considering competent and probative evidence of criminal wrongdoing." *Id.* Thus, the substantial social costs of applying the exclusionary rule in this case far outweigh any perceived minimal deterrent value. *See generally Herring*, 555 U.S. at 141–42.

## CONCLUSION

Fisher's motion and his objections to the R&R are unfounded. The searches were specifically approved by the magistrate judge, the particularly described and

approved locations were searched, the particularly described information was seized, and suppression would not serve the purpose of the exclusionary rule. For all these reasons, the Court should overrule Fisher's objections to the R&R and deny his motion to suppress.

Respectfully submitted,

RYAN K. BUCHANAN
United States Attorney

CHRISTOPHER J. HUBER
Assistant United States Attorney
Georgia Bar No. 545627
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6292
Chris.Huber@usdoj.gov

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Nicholas J. Schilling Jr.*
RICHARD M. ROLWING (OH Bar No. 0062368)
PARKER R. TOBIN (VA Bar No. 91126)
JESSICA A. KRAFT (MI Bar No. P80841)
NICHOLAS J. SCHILLING JR. (IL Bar No. 6327559)
GRACE ALBINSON (NY Reg. No. 4952697)
Trial Attorneys
United States Department of Justice, Tax Division
4Con Building, 150 M. St. NE
Washington, D.C. 20002
(202) 353-9377 (RMR); Richard.M.Rolwing@usdoj.gov
(202) 514-0454 (PRT); Parker.R.Tobin@usdoj.gov
(202) 514-7670 (JAK); Jessica.A.Kraft@usdoj.gov
(202) 514-5886 (NJS); Nicholas.J.Schilling@usdoj.gov

(202) 616-3311 (GEA); Grace.E.Albinson@usdoj.gov

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rules 7.1(D) and 5.1(C), the undersigned hereby certifies that the foregoing United States' opposition to Defendant's motion is prepared in Book Antiqua, 13-point font.

By: */s/ Nicholas J. Schilling Jr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of January 2023 this document was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notifications of the fling to all attorneys of record.

RYAN K. BUCHANAN
UNITED STATES ATTORNEY

By: <u>/s/ *Nicholas J. Schilling Jr.*</u>