**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| UNITED STATES OF AMERICA | |
| :--- | :--- |
| v. | **CASE NO.:**<br>**1:21-CR-00231-TCB-CMS** |
| JACK FISHER, | |
| Defendant. | **(Filed under seal)** |

## OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION TO DISMISS FOR PRE-INDICTMENT DELAY

### I.    INTRODUCTION

Respectfully, Mr. Fisher objects to the Magistrate Judge's Report and Recommendation on his Motion to Dismiss for Pre-Indictment Delay. The Magistrate Judge discounted the prejudice suffered by Mr. Fisher as a result of the delay—a hurdle he easily clears—and erred in the analysis of the purpose and intentionality of the delay. As explained below, the Motion should be granted.

### II.    STANDARD OF REVIEW

This Court considers objections to the Magistrate Judge's Report and Recommendation *de novo.* Fed. R. Crim. P. 59(b)(3). As a result, the briefing before the Magistrate Judge is incorporated by reference herein. "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit

1

the matter to the magistrate judge with instructions."  Fed. R. Crim. P. 59(b)(3).

## III.    LEGAL STANDARD FOR PRE-INDICTMENT DELAY

The Supreme Court has held that the Due Process Clause of the Fifth Amendment requires dismissal of an indictment where a delay in indictment causes "substantial prejudice to the [defendant's] rights to a fair trial" and the "delay was an intentional device to gain tactical advantage of the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971); *see also generally United States v. Lovasco*, 431 U.S. 783 (1977).

While, in general, "[s]tatutes of limitation are the primary guarantee against the Government bringing overly stale criminal charges," (Doc. No. 387 at 3), statutes of limitation "do not fully define a defendant's rights with respect to the events occurring prior to indictment." (*Id.*).  Thus, the Due Process Clause plays a role in protecting against delay.  (*Id.*) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977)).  That is particularly true here, where two conspiracies are charged, permitting conduct that is more than twenty years old to be the subject of criminal prosecution.

In the Eleventh Circuit, a showing of preindictment delay requires proving two prongs: "1) that the delay caused actual prejudice to the conduct of his defense and 2) that the government intentionally caused the delay in order to gain a tactical

2

advantage over the defendant." (*Id.* at 3-4) (citing *United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir. 1986)).

The second prong does not require a showing of bad faith in the traditional sense. *United States v. Foxman*, 87 F.3d 1220, 1222-23 (11th Cir. 1996). Rather, "[t]he critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed." *Id.* at 1222. (remanding for evidentiary findings regarding the reasons for the delay). In *Foxman*, the Eleventh Circuit Court of Appeals explained it "would have little difficulty in permitting the foreseeable consequences of a deliberately chosen litigation strategy to be visited upon the government." *Id.* at 1223.

## IV.  ANALYSIS

Mr. Fisher has met his burden under binding precedent in *Caporale* and *Foxman*.  The Due Process clause protects Mr. Fisher against the exact type of harm the government has caused in this case.

### a.  Mr. Fisher Has Satisfied Prong 1 by Demonstrating Prejudice

To prove prejudice, Mr. Fisher need only "show that the loss impaired his ability to prove a meaningful defense."  (Doc. No. 387 at 4) (citing *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982)).

The death of CI-1, the key informant in this case who blew the whistle to cover his own culpable conduct, impairs the ability of Mr. Fisher to provide a meaningful defense. The Magistrate Judge cited Mr. Fisher's brief at page 9 to say "Defendants admit they have no idea if [CI-1] was in possession of any exculpatory evidence." (Doc. No. 387 at 5). While a defendant need not prove a dead witness has "exculpatory evidence," only that his defense is impaired, Mr. Fisher made no such admission. Such an admission does not appear on page 9 of his brief; instead, Mr. Fisher detailed the impairment to his defense:

> The important role that CI-1 would have served in this case cannot be overstated. As the civil engineer responsible for land planning and who provided the inputs for the discounted cash flow method the appraiser used, CI-1 would have known whether the appraisal could be upheld, as well as the buildability of the lots. . . . To the extent there is an allegation that the appraisals were "grossly inflated" or that there was undue influence on the appraiser for the 2013 and 2014 transactions, CI-1 would be culpable for such conduct, not Mr. Fisher—key exculpatory evidence.

(Doc. No. 221 at 8-9). In fact, Mr. Fisher's brief was replete with explanation about why the testimony of CI-1 is so important. And he once again went into detail about the testimony CI-1 could provide in his reply brief. (Doc. No. 372 at 7-8).[1]

---

[1] Despite incorrectly asserting that "Defendants admit they have no idea if [CI-1] was in possession of any exculpatory evidence." (Doc. No. 387 at 5), the Magistrate Judge noted CI-1's role in the Court's recitation of the facts. (*Id.* at 2) (noting CI-1 "was a civil engineer responsible for land planning for the 2013 and 2014 transactions" and "[h]e also provided inputs to the appraisers").

The Magistrate Judge focused on the point that CI-1 is a government informant, incorrectly concluding that, as a result, the *government* lost a key witness and not Mr. Fisher. But CI-1's whistleblower status does not change the facts he knows. Mr. Fisher and his co-defendants are charged with fraudulently inflating appraisals. The genesis of those allegations is two transactions: Ft. Myers Limited Partnership and Thompson Mountain, LLC. Those transactions are central in the Superseding Indictment. (Doc. No. 28 at ¶¶ 53, 80-85, 96-97, 113-121, 130-31, 240-42). For both of those, *it was CI-1* who did the analysis and provided the inputs relied upon by the appraisers—not Mr. Fisher or his co-defendants. (Doc. No. 221 at 9; Doc. No. 387 at 7-8). Mr. Fisher has been deprived of CI-1's testimony in that regard. And while Mr. Fisher cannot know the full extent of statements and other documents involving CI-1 that have been withheld by the government, he knows that the government has withheld certain documents, presumably in light of his inability to testify as a cooperating witness due to his death.[2]

What is more, CI-1 came up with his own estimate of value for the Ft. Myers property that far exceeded the appraised value. In other words, CI-1 thought the properties were worth *more* than the "inflated" appraised value. How CI-1 arrived

---

[2] For example, while the government disclosed CI-2's tax returns, they did not disclose CI-1's tax returns. Thus, Mr. Fisher does not know if CI-1 took a deduction for the conservation easements in which he participated or amended his tax returns.

at that estimate is key testimony that is pivotal to Mr. Fisher's defense—particularly here where the government accuses Mr. Fisher of committing a crime for anticipating the appraised value. (Doc. No. 28 at ¶ 46(a)) (alleging that Mr. Fisher and others "pre-determined the value of the easement before any appraisal was performed."). CI-1 also anticipated the value and participated in the transactions. Since he is clearly adverse to Mr. Fisher, it is key evidence to show that the originator of these allegations engaged in the same conduct. It is also important to show that CI-1 did not believe the appraisal was inflated; if anything, he thought it was too low. Mr. Fisher has been deprived of that key testimony because of the government's delay.

CI-1 is not the only dead witness. The Magistrate Judge's Report and Recommendation held that other witnesses are not important because they "are not referenced in the indictment." (Doc. No. 387 at 5). Of course they are not in the indictment—the indictment outlines the charges against Mr. Fisher, it does not include exculpatory witnesses or witnesses key to Mr. Fisher's defense. Some of the key witnesses are clients of the accounting firm whose principals, Stein and Corey Agee, are cooperating with the government. Those witnesses were investors in Greenfields and Petite Pines, two entities the Indictment alleges were the key to the "backdating" allegations. (Doc. No. 28 at ¶ 91) ("2014, Fisher, Stein and Corey

Agee, and other co-conspirators sold units in ICIF 2013 through Green Fields and Petite Pines, and backdated documents to make it appear as if the sales occurred in 2013.") (emphasis omitted).  Those witnesses are important to testify that it was the Agees who structured those entities and sold units in them, not Mr. Fisher.  (Doc. No. 221 at 8; Doc. No. 372 at 4-5).  Mr. Fisher has been deprived of that key defense because of the government's delay.  (*Id.*) (explaining the prejudice).

There are other key witnesses that have passed away due the government's delay as well.  At least four other investors have passed away. The Magistrate Judge's Report and Recommendation ignores Mr. Fisher's showing from the government's own files that one of those investors told the government that ████ ████████████████████████████████████████████████████████████████████ ██████████ . ████████████████████████████████████████████████████ ██████████████████████████████████ . ███████████████ Why Mr. Fisher—who is accused of "selling illegal tax shelters" and not engaging in "real estate investment," (Doc. No. 28 at ¶ 1)—would purchase property with no intention of obtaining any tax benefit is key evidence to his defense. Who knows what else these witnesses might have said?  We will never know because Mr. Fisher has been deprived the opportunity to develop these defenses as a direct result of the government's delay.

Even if these witnesses were not key witnesses for Mr. Fisher's defense—
which they are (*see also* Doc. No. 221 at 8-10; Doc. No. 372 at 4-9)—Mr. Fisher has
also lost the constitutionally-guaranteed right to confront them, including the
whistleblower who began this entire investigation (somebody who was complicit in
the alleged misconduct and expected significant windfalls from "blowing the
whistle"). Such confrontation "(1) insures that the witness will give his statements
under oath—thus impressing him with the seriousness of the matter and guarding
against the lie by the possibility of a penalty for perjury; (2) forces the witness to
submit to cross-examination, the 'greatest legal engine ever invented for the
discovery of truth'; (3) permits the jury that is to decide the defendant's fate to
observe the demeanor of the witness in making his statement, thus aiding the jury in
assessing his credibility." (Doc. No. 372 at 11) (citing *California v. Green*, 399 U.S.
149, 158 (1970) (internal citations omitted)). Mr. Fisher has lost "the greatest legal
engine ever invented for the discovery of truth," and he has no adequate substitute.
(*Id.* at 12) (citing United *States v. Santiago*, 987 F. Supp. 2d 465, 486–87 (S.D.N.Y.
2013)) (dismissing the indictment, in part, because a key witness was missing, and
defendant "is not required to give up one constitutional right [confrontation] in order
to obtain the benefit of another [due process]; he need not 'accept a cure'" and noting
the "actual prejudice caused by Government delay that rises to the level of a due

process violation by giving up his Sixth Amendment right of confrontation").

Notably, the Magistrate Judge's Report and Recommendation ignored this critical showing of prejudice except to mention in a footnote that Mr. Fisher may raise the issue in a motion *in limine*. (Doc. No. 387 at 5, n. 1). And while Mr. Fisher may do so, the existence of a separate evidentiary issue does not resolve the harm to Mr. Fisher's defense caused by the government's pre-indictment delay, nor was it the answer provided by the courts in the cases cited by Mr. Fisher. The loss of the constitutionally-guaranteed right to confrontation is prejudice and should have been found by the Magistrate Judge.

Instead, the Magistrate Judge artificially raised the standard for demonstrating prejudice, which Mr. Fisher has cleared. The relief Mr. Fisher seeks is not unprecedented by any stretch. Indeed, the Eleventh Circuit has made clear that "[a]lthough high, the actual prejudice threshold is not insurmountable and has in fact been met in several of our cases." *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985) (citing *United States v. Mills*, 704 F.2d 1553, 1557 (11th Cir. 1983) (death of key witness); *United States v. Lindstrom*, 698 F.2d 1154, 1158 (11th Cir. 1983) (death of two witnesses); *United States v. Shaw*, 555 F.2d 1295, 1298–99 (5th Cir. 1977) (death of witness, failure of memory, and deteriorating health and finances of defendant)); *see also United States v. Glist*, 594 F.2d 1374, 1377–78 (10th Cir.

1979); *Santiago*, 987 F. Supp. 2d at 484–88; *United States v. Sabath*, 990 F. Supp. 1007 (N.D. Ill. 1998); *United States v. Sample*, 565 F. Supp. 1166, 1175–81 (E.D. Va. 1983); *United States v. Morrison*, 518 F. Supp. 917, 918–19 (S.D.N.Y. 1981) ("While I am loathe to dismiss an indictment for the gross negligence of the government, the clear prejudice to the defendant here requires it."); *United States v. Richburg*, 478 F. Supp. 535, 538–43 (M.D. Tenn. 1979).

The United States Supreme Court has held, "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *Barker v. Wingo*, 407 U.S. 514, 532 (1972) (addressing post-indictment delay); *see also United States v. Marion*, 404 U.S. 307, 324 (1971) ("Undue delay may be as offensive to the right to a speedy trial before as after an indictment or information.") (Douglas, J., concurring). Prejudice was thus established here and should have been found by the Magistrate Judge.

### b. Mr. Fisher Has Satisfied Prong 2 by Demonstrating Intentional Delay

The Magistrate Judge noted that Mr. Fisher "complain[s] that [he] was not added as [a] defendant[] until February 2022, more than eight months after the original indictment against . . . Herbert Lewis was returned." (Doc. No. 387 at 1-2); *see also* (*id.* at 7). That misses the point. The eight months of delay is not the issue— it is that those eight months were strategic. The government indicted this case, waited for CI-1 to pass away, and then superseded the Indictment to add Mr. Fisher.

The chronology shows the delay was intentional and for the purpose of a tactical advantage:

- <u>January 2017</u>.  Investigation begins as a result of a whistleblower complaint filed by CI-1 and CI-2.

- <u>June 9, 2021</u>.  The Indictment in this case is filed and made public.

- <u>September 28, 2021</u>.  CI-1 passes away.

- <u>February 24, 2022</u>.  The Superseding Indictment is filed, and Mr. Fisher is added as the lead defendant.

The delay was not investigative. As the Court has observed, the Superseding Indictment charges largely the same conduct as the first.  (Doc. No. 345 [R&R] at 8) ("[T]he Disputed Counts in the Superseding Indictment are virtually identical to the corresponding charges in the Original Indictment . . . ."); (Doc. No. 394 [Order] at 8) ("[T]he charges in each indictment are 'virtually identical' in nature."). Moreover, no additional investigation resulted in adding Mr. Fisher to the indictment. The first indictment charges only Mr. Lewis, but the Superseding Indictment's references to Mr. Lewis also reference Mr. Fisher in the same breath, demonstrating that, at least in the government's eyes, their conduct was intertwined as part of the alleged conspiracy. (Doc. No. 28 at ¶¶ 37, 40, 42, 44, 46, 58, 59, 60, 62, 63, 64, 73, 122, 123-124, 153-154, 183, 190, 218, 243, and 244).

The government cannot contend it did not intend to indict Mr. Fisher in June

of 2021 but later found additional evidence and thus indicted him in February of 2022. *See United States v. Harmon*, 379 F. Supp. 1349, 1351 (D.N.J. 1974) ("In the lack of any reason advanced by the government for the delay, we may infer that there was an intent by the government to secure a tactical advantage over the defendant."); *Sample*, 565 F. Supp. at 1177 (holding defendant was prejudiced by death of key witness during eleven months of government inaction between completion of investigation and renewed plea discussions). The timing indicates the government— knowing CI-1's testimony would be critical to Mr. Fisher's defense—waited to indict Mr. Fisher until he had died.

The Magistrate Judge relied upon the government's representation "that the witness died unexpectedly" and that the government was "surprised as anyone by CI-1's death," (Doc. No. 387 at 8), but denied Mr. Fisher's request for an evidentiary hearing to explore the truth, (*id.* at 9). In other words, the Report and Recommendation substitutes any real evidentiary analysis of prejudice or harm for its own judgment of the government's good faith based on a proffer that contradicts the only evidence presently before the Court; however, this is not the standard and not how other courts have resolved evidentiary concerns. *See United States v. Jackson*, 446 F.3d 847 (8th Cir. 2006) (reversing the denial of a dismissal for preindictment delay for lack of a showing of prejudice without an evidentiary

hearing, and remanding for an evidentiary hearing); *United States v. Jackson*, 488 F.

Supp. 2d 866, 872-73 (D. Neb. 2007) (holding an evidentiary hearing on remand,

finding prejudice, and dismissing the indictment for pre-indictment delay). *See also*,

Section IV(c), infra.[3]

The Magistrate Judge held that Mr. Fisher identified "no possible tactical

advantage that the Government could have achieved by adding them to the case in

February 2022, with the filing of the Superseding Indictment." (Doc. No. 387 at 8).

But had Mr. Fisher been included in the original indictment, CI-1 would have still

been alive. The government waited to indict Mr. Fisher to deprive him of that

defense. *See Foxman*, 87 F.3d at 1223 n. 2 ("[T]the tactical advantage sought *is* the

prejudice to the defendant which the government anticipates will flow from the

delay.") (emphasis in original). In the meantime, Mr. Fisher was trying to engage

with the government.[4]

---

[3] There are other evidentiary concerns, as well. For example, while the whistleblowers submitted recordings of conversations with Mr. Fisher, it is not clear *all* of the recordings have been provided. CI-1 cannot now be asked about other conversations he recorded and decided not to provide to his attorney, to the government, or both.

[4] Prior to the Superseding Indictment, Mr. Fisher was unaware of what charges, if any, might be levied against him. Despite requesting one, a pre-indictment conference was never granted, and a target letter was never sent. *See* U.S. Dept. of Justice Criminal Tax Manual § 1.04[2][b][3] ("If the taxpayer requests a conference with the Tax Division, the request will usually be granted."); *Id.* ("Prior to or during

Importantly, the government does not have to act in "bad faith" in the traditional sense to satisfy the "tactical delay" prong. *Foxman*, 87 F.3d at 1223 n. 2 ("[B]ad faith in this sense or in the sense of a subjective sinister motive is not critical to a due process violation for preindictment delay."). The Supreme Court has found "reckless disregard of circumstances" is enough, *Lovasco*, 431 U.S. at 795 n. 17. Here, where the prosecution has spent five years on this case, with a seventy-year-old defendant and many witnesses even older, a reckless disregard of the circumstances has been established, and it is precisely the type of "foreseeable consequence of a deliberately chosen litigation strategy" described in *Foxman*, 87 F.3d at 1223 n. 2.[5]

"The critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant, and, as a result of that judgment, an indictment is delayed."). In *Foxman*, the government

---

the conference, the Tax Division generally advises the taxpayer of the proposed charges . . . the method of proof, and the criminal tax computations provided by the IRS."); Justice Manual § 6-4.214 ("[T]he Tax Division generally grants a taxpayer's written request for a conference with the Division in Washington, D.C."); *id.* ("During the conference, the Tax Division usually advises conferees of the proposed charges, the method of proof, and the income and tax computations that the IRS recommended.").

[5] The government's motivation for the delay could only truly be proven after either discovery or an evidentiary hearing, which, as explained below, should have been ordered.

delayed while the courts affirmed a defendant's convictions so they could force him to testify and implicate others. Like delay to attain convictions, waiting for cooperating witnesses and plea deals to strengthen the government's case is an impermissible reason for delay. *See United States v. Anwari*, No. 1:21-CR-85 (Doc. Nos. 74, 159) (E.D. Va. June 2, 2021) (dismissing the case with prejudice for preindictment delay after defendant argued the government engaged in a "pressure campaign to resolve these allegations by plea bargain, rather than prosecuting the alleged crimes"); *see also id.* (Doc. No. 160 at 43:3-4). Here, the government has been focusing on getting others to plead and cooperate to help prove its case. (Doc. No. 221 at 3; Doc. No. 372 at 6-7, n. 1-2). While that "pressure campaign" has been largely unsuccessful, the government did score another plea, albeit late in the process. *See*, *e.g.*, *United States v. Lenz*, No. 9:22-CR-80119 (Doc. Nos. 1, 12) (S.D. Fl. August 3, 2022).

The government had every incentive to delay prosecution to "flip" Mr. Lenz, and so it did. ███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████



███████████████████████████████████████████. It has not yet been disclosed to Mr. Fisher—an additional reason the delay prejudices Mr. Fisher, who has to ██████ ███████████████████████ in less than two months.

Delaying an indictment in an attempt to collect guilty pleas violates due process as a matter of law. *See Howell v. Barker*, 904 F.2d 899, 894 (4th Cir. 1990). One court has chided "the enervating effect of focusing on plea bargaining rather than on prosecution" and noted that "[w]ith vigorous prosecution, plea bargains will occur. With unnecessary, prejudicial delays in prosecution, dismissals will occur." *Sample*, 565 F. Supp. at 1186. However, the Magistrate Judge's Report and Recommendation does not deal with this important issue, glossing over a significant showing of intentional (i.e., strategic) delay and prejudice to Mr. Fisher.

### c. The Magistrate Judge Should Have Ordered an Evidentiary Hearing

With little analysis, the Magistrate Judge denied an evidentiary hearing. However, a hearing is proper for a motion such as this one. *See, e.g.*, *United States v. Ingram*, 446 F.3d 1332, 1335 (11th Cir. 2006) (noting that the district court held an evidentiary hearing on defendant's motion to dismiss the indictment based on the government's pre-indictment delay); *United States v. Benson*, 846 F.2d 1338, 1340 (11th Cir. 1988); *United States v. Williams*, No. 1:11-CR-547-ODE-ECS, 2012 WL 5845004, at *1 (N.D. Ga. Sept. 4, 2012), *report and recommendation adopted*, 2012

WL 5845004 (N.D. Ga. Nov. 16, 2012) (holding an evidentiary hearing on defendant's motion to dismiss the indictment based on the government's pre-indictment delay); *United States v. Carthen*, No. 2:15-CR-511-KKD-GMB, 2016 WL 3892475, at *1 (M.D. Ala. June 20, 2016), *report and recommendation adopted*, No. 15-CR-00511-KKD-GMB, 2016 WL 3883440 (M.D. Ala. July 18, 2016) (same); *United States v. Scrushy*, No. 2:05-CR-119-F, 2006 WL 780905, at *1 (M.D. Ala. Mar. 27, 2006) (same).

Indeed, without a hearing—or at least discovery—a Defendant frequently has no way to gain the evidence needed to prove the second prong regarding the government's motivation. *See generally Marion*, 404 U.S. at 323-27; *Lovasco*, 431 U.S. at 788-91; *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994); *United States v. Benson*, 846 F.2d 1338, 1340 (11th Cir. 1988); *Stoner v. Graddick*, 751 F.2d 1535, 1541 (11th Cir. 1985); *Foxman*, 87 F.3d at 1222. To rule against Mr. Fisher on this motion, the Magistrate Judge should have afforded him an evidentiary hearing. *Howell v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990) ("[T]he Supreme Court made it clear that the administration of justice, vis-a-vis a defendant's right to a fair trial, necessitated a case-by-case inquiry based on the circumstances of each case."). Indeed, the substantial evidence presently before the Court supports his motion.

## V.    CONCLUSION

The death of multiple witnesses easily meets the burden to prove prejudice, particularly when those witnesses are as essential as those here—where they provided the data to the appraisers that Mr. Fisher is accused of providing, invested in entities the government alleges were part of a backdating scheme, and sold property to Mr. Fisher for which he found unsuitable for a conservation easement (but nonetheless purchased). That prejudice was caused intentionally while the government strategically waited and pressured others to plead. This case should be dismissed under the Due Process clause as a result, whether before or after an evidentiary hearing.

Respectfully submitted this the 11th day of January, 2023,

/s/ *Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141
Brett.Switzer@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363-1017
Tel: (404) 872-7000

Russ Ferguson* (N.C. Bar No. 39671)
Russ.Ferguson@wbd-us.com
Claire J. Rauscher*  (N.C. Bar No. 21500)
Claire.Rauscher@wbd-us.com
Michael A. Ingersoll* (N.C. Bar No. 52217)
Mike.Ingersoll@wbd-us.com
301 S. College Street, Suite 3500
Charlotte, NC 28202
Tel: (704) 331-4920

Luke Cass* (DC Bar No. 491706)
Luke.Cass@wbd-us.com
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Tel: (202) 857-4426

M. Rhett DeHart*
5 Exchange St
Charleston, SC 29401
Tel: (843) 722-3400
Email: Rhett.DeHart@wbd-us.com

* *Admitted Pro Hac Vice*

*Attorneys for Defendant Jack Fisher*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION ON THE MOTION TO DISMISS FOR PRE-INDICTMENT DELAY** complies with the font and point selections approved by the court pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia. The foregoing filing was prepared on a computer using 14-point Times New Roman font.

This 11th day of January, 2023.

*s/ Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141

*Attorney for Defendant Jack Fisher*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 11th day of January, 2023.

*s/ Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141

*Attorney for Defendant Jack Fisher*