IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CR-00231-TCB |
| | ) | |
| JACK FISHER, | ) | |
| JAMES SINNOTT, and | ) | |
| CLAY MICHAEL WEIBEL, | ) | |
|     a/k/a CLAYTON WEIBEL | ) | |

## UNITED STATES' TRIAL BRIEF

Defendants Jack Fisher, James Sinnott, and Clay Weibel organized, promoted, and sold abusive tax shelters involving fraudulently valued syndicated conservation easements, and created and caused to be created false documents to support their scheme. They are charged with, among other crimes, conspiring to defraud the United States and to commit wire fraud. The United States submits this brief to alert the Court to potential trial issues.

## I.   Theory of the Case

Fisher, Sinnott, and Weibel executed virtually the same scheme for years. They, along with their coconspirators: created entities, the Tax Shelters; used the Tax Shelters to buy other entities that owned vacant land, the Property Companies; sold to taxpayer-participants units in the Tax Shelters; caused the Property Companies to donate land and conservation easements over land to land conservancies and charitable organizations; fraudulently obtained inflated

appraisals of those donations; and claimed on their tax returns and caused the entities and participants to claim on their returns fraudulent deductions based on the inflated appraisals. Dkt. No. 28 ¶¶ 30-33, 38-41, 298-303.

The defendants, the entities, and the participants were not entitled to the deductions claimed. Their Tax Shelters were organized as partnerships with no business purposes, lacking economic substance, and were thus disregarded under federal law. *Id.* ¶¶ 21–22, 40–44. The appraised value of the land and conservation easements donated by their Property Companies, and thus the amounts of the claimed deductions, contained falsities and grossly exceeded the true value of the donations. *Id.* ¶¶ 33, 40, 45-53. And they created and caused to be created falsely dated records to assist participants in claiming the already-fraudulent deductions after the close of tax years. *Id.* ¶¶ 57–61. The defendants also attempted to conceal the true, illegal nature of their conduct by, among other means, marketing the Tax Shelters as "tax advantaged real estate investments" and holding "votes" regarding the potential donation of land owned by the Tax Shelters that were a predetermined outcome. *Id.* ¶¶ 31, 40, 42-43. Fisher personally profited from this scheme and used the proceeds of the scheme to make millions of dollars in personal expenditures. *Id.* ¶¶ 309-10.

## II.    Procedural History

In February 2022, Fisher, Sinnott, and Weibel, along with four of their

coconspirators, were indicted for conspiring to defraud the United States, in violation of 18 U.S.C. § 371; conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349; substantive wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; aiding and assisting the filing of false tax returns, in violation of 26 U.S.C. § 7206(2); subscribing to false tax returns, in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2; and money laundering, in violation of 18 U.S.C. §§ 1957 and 2. *See* Dkt. No. 28. The trial of Fisher, Sinnott, and Weibel is set for July 12, 2023. Dkt. No. 506. The table below details the charges :

| Defendant | Offense | U.S. Code | Counts |
|-----------|---------|-----------|--------|
| Fisher | Conspiracy to Defraud the U.S. | 18 U.S.C. § 371 | 1 |
| | Wire Fraud Conspiracy | 18 U.S.C. § 1349 | 2 |
| | Aid and Assistance, False Return | 26 U.S.C. § 7206(2) | 33-48 |
| | Subscribing to a False Tax Return | 26 U.S.C. § 7206(1) | 103-106 |
| | Money Laundering | 18 U.S.C. § 1957 | 122-135 |
| Sinnott | Conspiracy to defraud the U.S. | 18 U.S.C. § 371 | 1 |
| | Wire Fraud Conspiracy | 18 U.S.C. § 1349 | 2 |
| | Aid and Assistance, False  Return | 26 U.S.C. § 7206(2) | 33-48 |
| | Subscribing to a False Tax Return | 26 U.S.C. § 7206(1) | 107-112 |
| Weibel | Conspiracy to defraud the U.S. | 18 U.S.C. § 371 | 1 |
| | Wire Fraud Conspiracy | 18 U.S.C. § 1349 | 2 |
| | Aid and Assistance, False Return | 26 U.S.C. § 7206(2) | 52-63 |

## III.   Offenses Charged

### A. Klein Conspiracy — 18 U.S.C. § 371

"If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined . . . or

imprisoned . . ., or both." 18 U.S.C. § 371. Conspiracies to defraud the United States by impeding, impairing, and obstructing the Internal Revenue Service ("IRS"), as is charged here, Dkt No. 28 ¶¶ 36-37, are referred to as *Klein* conspiracies. *See United States v. Donaldson*, 767 F. App'x 903, 909 (11th Cir. 2019). To prove a defendant guilty of a *Klein* conspiracy, the government must prove:

1. two or more people in some way agreed to try to accomplish a shared and unlawful plan, that is, to impede, impair, and obstruct the IRS;

2. the defendant knew the unlawful purpose of the plan and willfully joined in it;

3. during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the indictment; and

4. the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Offense Instruction 13.6, Eleventh Circuit Pattern Jury Instructions (Criminal Cases) (rev. Mar. 10, 2022); *see also United States v. Margarita Garcia*, 906 F.3d 1255, 1277 (11th Cir. 2018) (listing elements). With respect to the conspirators' agreement, the government need not produce direct evidence. *United States v. Hough*, 803 F.3d 1181, 1187 (11th Cir. 2015). Nor is the government required to prove "each conspirator knew every detail or participated in every aspect of the conspiracy." *Donaldson*, 767 F. App'x at 909 (citing *United States v. Browning*, 723 F.2d 1544, 1546 (11th Cir. 1984)). So long as there is circumstantial evidence from which the agreement can be inferred, and the defendant was aware of the

"essential nature" of the agreement, he may be convicted. *See id.*

### B. Wire Fraud Conspiracy — 18 U.S.C. § 1349

"Any person who . . . conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The applicable wire fraud statute, 18 U.S.C. § 1343, provides, "Whoever, having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . ., transmits . . . by means of wire . . . communication in interstate . . . commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined . . . or imprisoned . . ., or both." To prove a defendant guilty of conspiring to commit wire fraud conspiracy, the government must prove:

1. two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the indictment; and

2. the defendant knew the unlawful purpose of the plan and willfully joined in it.

Offense Instruction 54, Eleventh Circuit Pattern Jury Instructions (Criminal Cases); *see also United States v. Watkins*, 42 F.4th 1278, 1285 (11th Cir. 2022). The essential elements of wire fraud are an intentional participation in a scheme to defraud and use of interstate wires in furtherance of the scheme. *United States v. Estepa*, 998 F.3d 898, 908 (11th Cir. 2021). The government must prove, as part of the scheme

to defraud, "a material misrepresentation, or the omission or concealment of a material fact calculated to deceive . . .." *Id.* As is the case with *Klein* conspiracies, the government may prove the conspirators' agreement through circumstantial evidence, and it is not required to prove a defendant knew all the details or participated in every aspect of the conspiracy. *Watkins*, 42 F.4th at 1285. But unlike *Klein* conspiracies, the government is not required to prove an overt act in furtherance of the conspiracy. *See* Offense Instruction 54, cmt. ("No overt act is required by Section 1349, and [it] . . . is specifically included in 18 U.S.C. § 371 . . .." (citing *United States v. Shabani*, 513 U.S. 10, 11–16 (1994) (holding drug conspiracy statute, 21 U.S.C. § 846, does not require the government to prove an overt act because text of statutes does not include such element, whereas general conspiracy statute, 18 U.S.C. § 371, does)).

### C. Aid and Assistance — 26 U.S.C. § 7206(2)

"Any person who . . . [w]illfully aids or assists in . . . the preparation or presentation . . . of a return . . ., which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the [taxpayer] . . . shall be guilty of a felony." To prove a defendant guilty of this offense , the government must prove:

1. the defendant aided or assisted in, counseled, or advised on the preparation or presentation of a federal tax return;

2. the return falsely stated as matter, as alleged in the indictment;

3. the defendant knew that the statement in the return was false;

4. the false statement was material; and

5. the defendant did so willfully, that is, with the intent to do something the defendant knew the law forbids.

Offense Instruction 109.2 Eleventh Circuit Pattern Jury Instructions (Criminal Cases); *see also United States v. Parker*, 277 F. App'x 952, 957 (11th Cir. 2008) (listing elements). "[A]nyone who causes a false tax return to be filed or who provides information that leads to the filing of a false tax return can be guilty of violating § 7206(2)." *United States v. Delavan*, 826 F. App'x 259, 264 (4th Cir. 2020). Willfulness, however, does not require the government to prove a defendant acted in bad faith, or with an evil motive or intent. *See United States v. Kerley*, 643 F.2d 299, 303 (5th Cir. 1981) (citing *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (per curiam)). To prove the false statement in the return was material, the government need only prove it had the natural tendency to influence or was capable of influencing the IRS. *See Margarita Garcia*, 906 F.3d at 1279–80 (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)).

### D. Making and Subscribing a False Tax Return — 26 U.S.C. § 7206(1)

"Any person who . . . [w]illfully makes and subscribes any return . . ., which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony." To prove a defendant guilty of this offense,

the government must prove:

1. the defendant made or caused to be made a federal income tax return;

2. the return contained a written declaration that it was made under the penalty of perjury;

3. when the defendant made or helped to make the return, he knew it contained false material information;

4. when the defendant did so, he acted willfully, that is, he intended to do something he knew violated the law; and

5. the false matter in the return related to a material statement.

Offense Instruction 109.1 Eleventh Circuit Pattern Jury Instructions (Criminal Cases); *see also Margarita Garcia*, 906 F.3d at 1279 (11th Cir. 2018) (listing elements). Section 7206(1) requires no intent to defraud. *United States v. Dain*, 258 F. App'x 90, 94 (9th Cir. 2007). And the government is required to prove only that the statement in the return had the natural tendency to influence or was capable of influencing the IRS, not that it did, in fact, influence the IRS. *Cf. Neder*, 527 U.S. at 16. Additionally, the defendant himself need not have prepared, signed, or filed the false return to be convicted, so long as he caused those acts. *See United States v. Ponder*, 444 F.2d 816, 822 (5th Cir. 1971)[1] (affirming defendant's conviction under § 7206(1) where secretary prepared, signed, and filed return); *United States v. McKee*, 506 F.3d 225, 233 (3d Cir. 2017) ("The law . . . merely requires sufficient

---

[1] Decisions of the former Fifth Circuit rendered before October 1, 1981, are binding in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

circumstances . . . from which a reasonable jury could find that the defendant did authorize the filing of the return with his name subscribed to it.").

### E.  Money Laundering – 18 U.S.C. § 1957

"Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished . . .." *See generally Rosemond v. United States*, 572 U.S. 65, 71 (2014) ("Under [18 U.S.C.] § 2 those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." (internal quotation marks omitted). To prove a defendant guilty of money laundering, the government must prove:

1. the defendant knowingly engaged or attempted to engage in a monetary transaction;

2. the defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;

3. the property had a value of more than $10,000;

4. the property was in fact proceeds of wire fraud; and

5. the transaction took place in the United States.

Offense Instruction 74.6, Eleventh Circuit Pattern Jury Instructions (Criminal Cases). Neither concealment, nor willfulness, is an element of money laundering under § 1957. See *United States v. Moran*, 778 F.3d 942, 963 (11th Cir. 2015); *United States v. Cancellier*, 69 F.3d 1116, 1121 (11th Cir. 1995).

## IV.   Relevant Concepts

### A. Conservation Easements: Restrictions to Preserve Significant Lands

A conservation easement is a legal agreement through which a landowner and another party agree to permanently restrict the development and use of the land with the purpose of achieving certain conservation and preservation goals in perpetuity. *See generally* Gerald Korngold, *et al.*, *An Empirical Study of Modification and Termination of Conservation Easements: What the Data Suggest About Appropriate Legal Rules*, 24 N.Y.U. Env't L.J. 1, 9–10 (2016) (defining and discussing background on conservation easements). Approximately forty years ago, Congress recognized the value of conservation easements in preserving the nation's "natural resources and cultural heritage" and expressed its belief that any tax deductions for such easements should be directed at the preservation of "unique or otherwise significant land areas." S. Rep. No. 96-1007, at 9 (1980). Now, under the Internal Revenue Code (IRC), a conservation easement, if properly structured, is a type of "qualified real property interest" that can be donated as a "qualified conservation contribution" and subsequently claimed as a tax deduction. *See generally* 26 U.S.C. § 170.

### B. Charitable Contributions; Limited to Tax Year Made

The IRC defines charitable contribution as "a contribution or gift to or for the use of," though not exclusively, a tax-exempt "corporation, trust, or

community chest, fund, or foundation . . . organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual." 26 U.S.C. § 170(c)(2). An individual who makes such a contribution may claim that contribution as a tax deduction only for the year in which the contribution was made, that is, paid to the tax-exempt organization. *Id.* § 170(a)(1).

### C. *Partnerships; Taxes on Partners*

A partnership is created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. *Comm'r v. Culbertson*, 337 U.S. 733, 740 (1949). A partnership is, in other words, an organization for the production of income to which each partner contributes income, capital, or services. *Id.*

Partnerships, as such, are not subject to income tax. Instead, each partner is individually taxed on and must report his share of the partnership income, even if the income is not actually distributed to the partners. If the partnership incurs a loss or a deduction, each partner can deduct his share of the loss and claim his share of the deduction on that partner's individual tax return. 26 U.S.C. §§ 701, 702. The law permits a partner to include only his share of partnership losses and deductions from a partnership on his individual income tax return for the time

period in the tax year in which he was a partner. Said another way, a partner cannot deduct losses or deductions for a taxable year, or a portion thereof, prior to his admission into the partnership. *United States v. Little*, 753 F.2d 1420, 1432 (9th Cir. 1984); *see also Martin v. Comm'r*, 43 T.C.M. (CCH) 1216, 1982 WL 11304 (T.C. Apr. 28, 1982) (declaring that it is impermissible for a partnership to retroactively allocate partnership income or losses to a new partner); *Williams v. United States*, 680 F.2d 382, 384 (5th Cir. 1982) (stating losses accrued by a partnership prior to transfer of the partnership interest cannot be assigned to the transferee).

### D. Backdating Partnership Documents Is Illegal

"Backdating documents to add partners [to a partnership], and then allocating deductions to those partners, is illegal . . .." Dkt. 311 at 32 (citing *Little*, 753 F.2d at 1434).

The Tax Code requires taxpayers to compute their taxable income on the basis of their taxable year, which is known as their annual accounting period. 26 U.S.C. § 441(b)(1). A taxpayer's annual accounting period is the annual period on the basis of which the taxpayer regularly computes his income in keeping his books. *Id*. § 441(c). A fundamental principle of income tax law is that taxable income is computed on the basis of an annual accounting period. *Fry v. Comm'r*, No. 46185-86, T.C. Memo. 1991-51, 1991 WL 14036 (T.C. Feb. 11, 1991) (citing *Burnet v. Sanford & Brooks*, 282 U.S. 359 (1931)). It is therefore settled that each

taxable year must be treated as a separate unit, and all items of gross income and deduction must be reflected in terms of their posture at the close of such year. *United States v. Consol. Edison Co.*, 366 U.S. 380, 384–85 (1961). This has been the rule for at least the last 80 years. *See Heiner v. Mellon*, 304 U.S. 271, 275 (1938) ("[T]he question whether taxable profits have been made is determined annually by the result of the operations of the year.").

The annual accounting principle has been applied in criminal tax prosecutions based on attempts by defendants to falsely backdate transactions to make it appear that certain events or transactions had occurred in a previous year when, in fact, the events occurred after the close of the earlier tax year. *See, e.g., United States v. Whistler*, 139 F. App'x 1 (9th Cir. 2005) (prosecution for preparation of fraudulent income tax returns which relied on backdated documents establishing trusts); *United States v. Wilson*, 118 F.3d 228, 231–32 (4th Cir. 1997) (prosecution for falsely backdating certain notes that were used to portray transactions to the IRS as nontaxable loan payments); *United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) (prosecution of tax shelter promoter for conspiracy to defraud the United States and impeding the IRS arising from falsely backdating documents used to claim tax deductions in prior tax year); *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir. 1987) (prosecution of tax shelter promoter who falsely backdated documents in 1977 to 1976 to claim tax benefits that were due to expire

by act of Congress on January 1, 1977); *United States v. Drape*, 668 F.2d 22, 24–25 (1st Cir. 1982) (prosecution of tax shelter promoter who backdated un-dated documents signed by clients). The tax shelter scheme in *Little*, for example, involved creating backdated and fraudulent dunning letters to document an event that actually took place in October 1981 as of May 1980. *Little*, 753 F.2d at 1449.

### E. *Economic Substance; No Deductions for Avoidant Transactions*

Federal tax law is concerned with the "economic substance" of transactions. *Curtis Inv. Co. v. Comm'r*, 909 F.3d 1339, 1347 (11th Cir. 2018). Economic substance is required by 26 U.S.C. § 7701(o), which states that "economic substance" in a transaction is met only when: (1) the transaction changes in a meaningful way (apart from Federal income tax effects) the taxpayer's economic position; *and* (2) the taxpayer has a substantial purpose (apart from Federal income tax effects) for entering into such transaction. (emphasis added). "A transaction . . . has economic substance when it has economic effects other than creation of tax deductions—that is, it has a reasonable possibility of making a profit." *Id.* (internal quotation marks omitted). A transaction without economic substance, entered into solely for the purpose of tax avoidance, cannot properly be used to compute taxes. *See* 26 U.S.C. § 7701; *accord Curtis Inv. Co.*, 909 F.3d at 1347 ("A transaction is not entitled to tax respect if it lacks economic effects or substance other than the generation of tax benefits, or if the transaction serves no business purpose. . . . If a transaction lacks

either objective economic effects or subjective business purpose, it will be disregarded for tax savings.") (internal citations and quotation marks omitted). In other words, the law does not allow a tax deduction arising from a transaction having no purpose, substance, or utility apart from the anticipated tax consequences. *See Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States*, 803 F.3d 1280, 1295 (11th Cir. 2015).

V.    **Doctrinal Issues**

*A. Willfulness; Circumstantial Evidence Sufficient*

The tax offenses require the United States to prove the defendants acted willfully, that is, with intent to violate a known legal duty. *See Cheek v. United States*, 498 U.S. 192, 192 (1991) ("Statutory willfulness, which protects the average citizen from prosecution for innocent mistakes . . . is the voluntary, intentional violation of a known legal duty."). Simply put, the government is required to prove the law imposed a duty, the defendant knew of that duty, and he voluntarily and intentionally violated that duty. *See United States v. Morris*, 20 F.3d 1111, 1115 (11th Cir. 1994). The duties here, of which the defendants were aware, are simple: abstain from falsifying documents and file truthful tax returns. *See id.* n.5 (noting defendants "were obliged to file returns that they believed to be correct; that is, in substantial compliance with the tax laws").

The United States, in proving willfulness, is not required to prove the

defendants knew the precise code section they violated, only that they knew their conduct was generally unlawful. *Cf. Bryan v. United States*, 524 U.S. 184, 189–96 (1998) (holding the term "willfully" in 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) requires proof the defendant knew his conduct was generally unlawful but does not require the defendant have known the specific licensing requirement he was violating). Nor is it required to prove the defendants acted with "bad purpose" or "evil motive." *United States v. Pomponio*, 429 U.S. 10, 12 (1976).

Willfulness is rarely provable by direct evidence. *See United States v. Schafer*, 580 F.2d 774, 781 (5th Cir. 1978). It may be demonstrated by circumstantial evidence demonstrating a consistent pattern of conduct which would be likely to mislead or to conceal information from the IRS. *See United States v. Hesser*, 800 F.3d 1310, 1330 (11th Cir. 2015).

## VI.   Evidentiary Issues

### A. Admission of Business Records via Rule 902(11) Certification

The United States intends to introduce, through certification, various bank and other commercial business records. *See generally* Fed. R. Evid. 803(6) (exempting from the rule against hearsay records of regularly conducted activity) and 902(11) (classifying as evidence that is self-authenticating certified domestic records of regularly conducted activity). All such records, as detailed in the United States' exhibit list, and their relevant certifications of authenticity have been or will

be produced to the defendants. And the defendants are not expected to challenge the records' authenticity. Accordingly, the United States may introduce these records without the testimony of a sponsoring witness. *See United States v. Lezcano*, 296 F. App'x 800, 807–08 (11th Cir. 2008) (finding business records admissible under Fed. R. Evid. 803(6) and 902(11) where government gave defendant notice of intent to introduce records and opportunity to inspect them). *See also United States v. Clotaire*, 963 F.3d 1288, 1293 (11th Cir. 2020) (finding Rule 902(11) certification do not violate Confrontation Clause).

## B. Admission of IRS Records as Public and/or Business Records

The United States also intends to introduce as public records IRS records, including tax returns for the Tax Shelters, the Property Companies, the taxpayer-participants, and defendants Fisher and Sinnott, and other individuals and entities. *See generally* Fed. R. Evid. 803(8) (exempting from the rule against hearsay records and statements of public offices); *see also generally United State v. Lockett*, 601 F. App'x 325, 327 (5th Cir. 2015) (per curiam) (finding IRS account transcripts were admissible under Fed. R. Evid. 803(8)); *United States v. Childress*, 24 F. App'x 139, 142 (4th Cir. 2001) (per curiam) ("[O]fficial IRS documents, even if generated by a computer, are admissible as public records under [Rule] 803(8)."). These records are certified and are thus admissible without the testimony of a sponsoring witness. *See* Fed. R. Evid. 902(4) (classifying as evidence that is self-authenticating

certified copies of public records); *see also United States v. Jimenez*, 513 F.3d 62, 79–80 (3d Cir. 2008).

### C. Issues Related to Audio Recordings and Certified Transcripts

Two whistleblowers and the undercover agent made recordings of conversations with Fisher, Sinnott, and other conspirators. At trial, the government intends to play portions of these recordings with the certified transcript synced to the audio as subtitles. To preserve the jury's time, the government intends to offer limited clips—several of the recordings exceed several hours in length. These clips of Fisher's and Sinnott's own statements are admissible *by the government* as statements by a party-opponent. *See* Fed. R. Evid. 801(d)(2). The Court has broad discretion to introduce recorded conversations "so long as there is independent assurance of accuracy." *United States v. Richardson*, 764 F.2d 1514, 1524 (11th Cir. 1985) (collecting cases).

The transcripts are admissible to assist the jury. *See generally United States v. Nixon*, 918 F.2d 895, 902 (11th Cir. 1990); *see also generally* Trial Instruction 3, Eleventh Circuit Pattern Jury Instructions (Criminal Cases) (permitting admission of transcript for "limited and secondary purpose of helping [the jury] follow the content of the conversation"). The speakers on the transcripts are identified only by the names used during the actual conversation. For instance, even if a testifying witness could identify a speaker's voice at trial without the speaker's name being

said, the transcript includes "Male Speaker 1" if the speaker is never identified in the audio by name.

Introduction of additional, relevant material to contextualize clips from the audio recordings does not include Fisher's or Sinnott's self-serving hearsay statements. *See Willis*, 759 F.2d at 1501. Moreover, defendants are typically prohibited from offering their own self-serving, exculpatory statements through the testimony of other witnesses—such as the government witnesses who will testify about the recordings. *See, e.g.*, *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999); *United States v. Ramirez-Perez*, 166 F.3d 1106, 1112–14 (11th Cir. 1999); *see United States v. Macrina*, 1:20-CR-216, 2022 WL 4594993 at *5 (N.D. Ga. Sept. 30, 2022) (citing *United States v. Vernon*, 593 F. App'x 883, 889-90 (11th Cir. 2014)). If Fisher or Sinnott want to tell their story to the jury, they must take the stand to do it. *See Cunningham*, 194 F.3d at 1199 ("[A] defendant cannot attempt to introduce an exculpatory statement … without subjecting himself to cross-examination.").

Several recordings were made by the now-deceased whistleblower while the other whistleblower was not present. But so long as there is "independent evidence of the accuracy of the tape recording," the recording may be admitted. *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir. 2014). Here, the government will call a witness who, although not one of the whistleblowers, was present at the time

two of the recordings were made. That witness recognizes the voices on the recordings, can identify the relevant speakers based on their voices, and will testify that he was in the vicinity of the conversation while those two of the recordings were being made. Indeed, his voice is audible in these recordings.

For some of the recordings, both whistleblowers were present, and the whistleblower who will be called at trial can testify to the manner in which the recording was made and verify that the recording accurately captures the conversation to which he was a party.

"Evidence is properly authenticated when there is evidence sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Duncan*, 166 F. App'x 464, 466 (11th Cir. 2006) (quoting Fed. R. Evid. 901(a)). In *United States v. Biggins*, the Fifth Circuit held that, to introduce a recording at trial, the government must show the recording is "an accurate reproduction of relevant sounds previously audited by a witness." 551 F.2d 64, 66 (5th Cir. 1977). The *Biggins* court held that the government must do so by establishing, among other facts, the competency of the person operating the recording, the fidelity of the equipment, and the identification of relevant speakers. *Richardson*, 764 F.2d at 1524 (citing *Biggins*). "But even if one or more of these requirements has not been satisfied, if there is independent evidence of the accuracy of the tape recording[,]" the recording may be admitted. *See v. Reeves*, 742

F.3d at 501 (internal brackets and quotation marks omitted). "[U]nder the Federal Rules of Evidence, an opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker can satisfy Rule 901(a)." *Id.* at 502 (internal brackets and quotation markers omitted); *see also* Fed. R. Evid. 901(b)(5). A witness for the United States will identify the voiced on the recordings. That witness's identification testimony, combined with other circumstantial evidence regarding the creation and custody of the recording, will be sufficient to authenticate it.

The common law rule of completeness permits an opposing party against whom a statement is admitted, by offering additional portions of the statement, to give the "complete understanding" of the statement. *United States v. Santos*, 947 F.3d 711, 729 (11th Cir. 2020). The rule is partially codified by Fed. R. Evid. 106, *id.* at 729–30, which provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." The Eleventh Circuit has extended Rule 106 to include oral testimony. *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005).

The defendants may, in an attempt to shield themselves from cross-examination, invoke the rule of completeness or Rule 106 to admit wholly self-

serving, exculpatory statements contained in the aforementioned recordings or made to witnesses that will testify at trial. That is not permitted. *Cf. Cunningham*, 194 F.3d at 1199 ("A defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."); *Vernon*, 593 F. App'x at 890 ("A defendant may not introduce his own exculpatory statement through another witness without subjecting himself to cross-examination."). The Rule of completeness does not permit a party to admit the entire remainder of a writing, recording, or recording. *Santos*, 947 F.3d at 730. It permits introduction only of "material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." *Id.*

### D. Defendant and Coconspirator Statements; Only Preponderance Standard

The United States intends to introduce numerous statements of the defendants and their coconspirators. *See generally* Fed. R. Evid. 801(d)(2) (designating as non-hearsay statements offered against an opposing party, made by the party in an individual or representative capacity, or made by the party's coconspirator during and in furtherance of the conspiracy). These statements include those made by the defendants and their coconspirators to each other, the taxpayer-participants, the IRS, and others and are in the forms of emails, other documents, audio recordings, and witness testimony. The government provided the defendants with a list of conspirators, in addition to those charged in the

superseding indictment, on June 2, 2022. The government supplemented that list by letter dated June 16, 2023.

The government is permitted to introduce against a defendant the statements of his coconspirators made during and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *see also Crawford v. Washington*, 541 U.S. 36, 56 (2004) (noting statements in furtherance of a conspiracy, by their nature, are not testimonial and thus do not implicate the Confrontation Clause). The government need only prove such a statement by a preponderance of the evidence, and may, in part, rely on the content of the statement itself. *See Bourjaily v. United States*, 483 U.S. 171 (1987).

### E. Expert Witness Testimony

The United States' expert, Mr. Charles Brigden, will opine on issues related to defendant Weibel's land appraisals. The United States has complied with its obligations under Fed. R. Crim. P. 16 and provided full disclosures to defendants in a letter dated January 27, 2023. The defendants have raised no challenges to Mr. Brigden's qualifications.

> In determining the admissibility of expert testimony under Federal Rule of Evidence 702, a district court must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Delva*, 922 F.3d 1228, 1251 (11th Cir. 2019) (internal footnotes and quotation marks omitted). An expert's opinion on an ultimate issue in a case—such as Mr. Brigden's conclusion that the defendant's conservation easements appraisals at issue were inflated, and thus the resulting tax deductions were false—is not objectionable, assuming the expert does not opine on the defendant's mental state. *See* Fed. R. Evid. 704. Mr. Brigden's testimony will comply with Rules 702 and 704.

### F. Summary Evidence; Testimony and Charts Admissible

In an effort to streamline its case, the United States intends to introduce significant summary evidence in this case, include summary charts pursuant to Fed. R. Evid. 1006 and summary testimony through an IRS revenue agent. Some of the United States' witnesses may also use demonstrative exhibits to summarizes records or portions of testimony.

The Eleventh Circuit has consistently approved the admission of summary evidence. *E.g., United States v. Osborne*, 677 F. App'x 648, 656 (11th Cir. 2017) ("[S]ummary exhibits are permissible so long as they are supported by the record . . ..."); *United States v. Ratfield*, 342 F. App'x 510, 513 n.4 (11th Cir. 2009) ("[C]ourts permit IRS agents to testify as summary witnesses."); *United States v. Gold*, 743 F.2d 800, 816 (11th Cir. 1984) (upholding admission of summary exhibits containing information derived from "other exhibits received into evidence or from oral

testimony"). The witnesses may also use demonstrative exhibits or visual aids, though they are not evidence.

## VII. <u>Procedural Issues</u>

### A. *Request for Exemption to Rule 615 (Rule Against Witnesses)*

At a party's request, a court must, or the court may on its own, "order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. Designated party representatives and persons "whose presence . . . [is] essential to presenting the party's claim" are not subject to the rule. Fed. R. Evid. 615(b), (c). Indeed, "[m]any district courts permit government counsel to have an investigative agent at counsel table throughout the trial . . .." *Id.*, cmte. n; *see also United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982) (finding case agent was "clearly exempted under Rule 615"). A case agent's presence in the courtroom is of particular importance when the case is complex. *See* Fed. R. Evid. 615, cmte. n.

Rule 615 does not explicitly limit the number of case agents that may assist the government, and the notes for the upcoming December 2023 amendments clarify courts have discretion to allow parties to swap designated representatives during trial. *See generally Ratfield*, 342 F. App'x at 512–13 (finding the district court did not abuse its discretion in exempting two IRS agents from the sequestration rule). Additionally, many courts have held summary witnesses are exempted from Rule 615 as persons whose presence is essential to the government's case. *Id.*

(upholding district court's decision to permit IRS summary witnesses to remain in the courtroom during trial).

The United States requests the Court permit its investigative case agents—Jennifer Berry, Joe Carl, R.J. Dawson, Nick Worsham, and Travis Hamilton—and its summary witness – Edward Coakley[2]—to remain in the courtroom for the entire trial. The case agents, as representatives of the United States, are exempt from Rule 615. And given the complexity of this case, which necessitates a summarizing-records witness to testify for the jury, the witnesses' presences are essential to the United States.

## CONCLUSION

The foregoing is a summary of the issues the government anticipates will arise at trial. The government respectfully requests leave to submit further memoranda, as necessary, to assist the Court.

Respectfully submitted,

RYAN K. BUCHANAN
UNITED STATES ATTORNEY

CHRISTOPHER J. HUBER (GA Bar No. 545627)
Assistant United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6292; Chris.Huber@usdoj.gov

---

[2] The United States provided the defendants notice that Revenue Agent Coakley will testify as a summary witness at trial on May 22, 2023.

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Grace Albinson*
RICHARD M. ROLWING (OH Bar No. 0062368)
GRACE ALBINSON (NY Reg. No. 4592697)
PARKER R. TOBIN (VA Bar No. 91126)
JESSICA A. KRAFT (MI Bar No. P80841)
NICHOLAS J. SCHILLING JR. (IL Bar No. 6327559)
Trial Attorneys
United States Department of Justice, Tax Division
4Con Building, 150 M. St. NE
Washington, D.C. 20002
(202) 353-9377 (RMR); Richard M. Rolwing@usdoj.gov
(202) 616-3311 (GEA); Grace.E.Albinson@usdoj.gov
(202) 514-0454 (PRT); Parker.R.Tobin@usdoj.gov
(202) 514-7670 (JAK); Jessica.A.Kraft@usdoj.gov
(202) 514-5886 (NJS); Nicholas.J.Schilling@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 7.1(D) and 5.1(C), the undersigned hereby certifies

that the foregoing United States' Trial Brief is prepared in Book Antiqua, 13-font.

By:  */s/ Grace Albinson*
Grace Albinson
Trial Attorney
U.S. Department of Justice, Tax Division

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of June 2023, this document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically notify counsel of record of the filing.

By:     */s/ Nicholas J. Schilling Jr.*
Nicholas J. Schilling Jr.
Trial Attorney
U.S. Department of Justice, Tax Division