## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JACK FISHER,

Defendant.

**CASE NO.:**
**1:21-CR-00231-TCB-CMS**

## <u>MOTION FOR JUDGMENT OF ACQUITTAL</u>

Defendant Jack Fisher hereby renews his Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29(c) and moves anew for Judgment of Acquittal based on the jury verdict.  In support thereof, Mr. Fisher shows this Honorable Court as follows.

### BACKGROUND

The United States' case at trial concluded on August 23, 2023.  (Doc. No. 666).  At that time, Mr. Fisher moved under Fed. R. Crim. P. 29 for Judgment of Acquittal.  After oral argument, the Court ordered written briefing from both sides. (*Id.*).  Mr. Fisher filed his brief on August 25, 2023.  (Doc. No. 669).  The Motion was denied in a one-sentence order, (Doc. No. 673), prior to the filing of the government's response brief, (Doc. No. 674).

Following the United States' case, Mr. Fisher put on a case-in-chief, as did both co-defendants, Mr. Sinnott and Mr. Weibel.  The case was submitted to the jury

1

on September 15, 2023.  (Doc. No. 702).  A juror was excused by the Court, over objection, on September 20, 2023.  (Doc. No. 728) ("The Court voir dired a juror. Another juror was released. Alternate juror was called in for deliberations.").  An alternate was then added to the jury and deliberations began again.  (*Id.*).  The jury returned a guilty verdict as to all counts for Mr. Fisher and Mr. Sinnott on September 22, 2023, (Doc. No. 739), and a not guilty verdict on all counts for Mr. Weibel, (*id.*; Doc. No. 741).

## ARGUMENT

## I.   THE EVIDENCE IS INSUFFICIENT TO PROVE A CONSPIRACY TO INFLATE APPRAISALS

There were two appraisers at issue in the case who allegedly inflated appraisals – Terry Roberts and Clay Weibel.  No direct or circumstantial evidence at trial proved that either conspired with Mr. Fisher to inflate appraisals.

As to Mr. Weibel, the jury found him not guilty on all counts, including both conspiracy counts.  (Doc. No. 741) (judgment of acquittal).  The jury thus found Mr. Weibel did not enter into a conspiracy at all.  If Mr. Weibel—the appraiser—was not a member of the conspiracy, there is no possible way for Mr. Fisher to have agreed to inflate appraisals.  Such an agreement would require the appraiser, the so-called "engine that made this scheme work," as articulated by the government in opening.  (Trial Tr. Vol. 3 at 48:5-5-8).  If Mr. Weibel's appraisals are not inflated, as the jury found, then a conviction of Mr. Fisher for conspiring to inflate appraisals

cannot be sustained.

Mr. Roberts, on the other hand, pled guilty to a conspiracy to defraud the United States.  However, his testimony under oath made clear that he did not agree *with Mr. Fisher* to inflate appraisals.  Indeed, although he admitted he now believes his appraisals were inflated, he testified he did not even *tell* Mr. Fisher as much (much less *agree* to a conspiracy with Mr. Fisher):

> Q. And at any period of time, did you ever tell [Mr. Fisher] that you thought [the appraisals] were inflated?
> A. No, ma'am.
>
> Q. So Mr. Fisher had a right to rely on what you gave him?
> A. Yes, ma'am.

(Trial Tr. Vol. 6 (Afternoon) 96:3-7).

To prove participation in a conspiracy, the government must have proven beyond a reasonable doubt, by circumstantial or direct evidence, "that a conspiracy existed and that the defendant knowingly and voluntarily joined the conspiracy." *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir.2005) (per curiam).  The government must also prove that the defendant "knew the essential nature of the conspiracy."  *Id*. at 1269-70.  Therefore, the evidence was insufficient to sustain a conviction that Mr. Fisher conspired to inflate appraisals.  As described below, this affects all of the counts for which Mr. Fisher was found guilty.

## II.    THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNT ONE BECAUSE NO DECEIT, CRAFT, OR TRICKERY WAS PROVEN

To sustain a conviction on Count One, conspiracy to defraud the United States, the prosecution must prove beyond a reasonable doubt that the Defendant interfered with or obstructed a lawful governmental function by deceit, craft, or trickery. *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924). Here, the evidence is insufficient to show any deceit, craft, or trickery.

As noted above, the appraisals could not have been knowingly inflated by Mr. Fisher, so there was no deceit, craft, or trickery involved in the value of the deductions. Moreover, because the total deduction is taken at the partnership level, the backdating allegations do not involve any deceit, craft, or trickery. (Trial. Tr. Vol. 11 (Morning) 147:3-4) (Stein Agee: "The deduction at the partnership level would have been the same."). Indeed, those allegations do not involve the IRS at all. The backdating allegations regard when individual partners joined the partnership. Those internal affairs of the partnership do not affect the IRS—no matter how many partners there are, the deduction is the same. In other words, if a partnership was entitled to a deduction of $1,000 and had two equal partners, each would take $500—a total deduction of $1,000. If the partnership allowed two more equal partners to join, each would deduct $250—but now there are four partners, so the total deduction would still be $1,000. Even if those two new partners were not

4

permitted to take the deduction, then the deduction would be reallocated among the proper partners. In any scenario, the total deduction allowed at the partnership level is always $1,000. The IRS is thus not affected, much less by deceit, craft, or trickery. Judgment of acquittal should thus be entered for Count One.

## III.   THE EVIDENCE IS INSUFFICIENT TO PROVE TWO SEPARATE CONSPIRACIES

The Superseding Indictment charged both a conspiracy to defraud the United States and a wire fraud conspiracy, which are Counts One and Two, respectively. In order to sustain a conviction on both, the prosecution was required to prove each was a *separate* conspiracy. *United States v. Votrobek*, 847 F.3d 1335, 1340 (11th Cir. 2017). The evidence was not sufficient to do so.[1]

In assessing whether two conspiracies have been established, courts in this circuit consider five factors: "(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case,

---

[1] Mr. Fisher sought an answer to how Count One differs from Count Two in his Motion for Bill of Particulars, (Doc. No. 113), but that Motion was denied, (Doc. No. 311). In its Response to that motion, the prosecution refused Mr. Fisher's invitation to explain how the two conspiracy counts differed while admitting that the wire fraud allegations are alleged "as part of a scheme to defraud the IRS." (Doc. No. 167 at 8-9).

and (5) places where the events alleged as part of the conspiracy took place." *Id.* Considering each seriatim leads to the conclusion that evidence of only one conspiracy was presented:

1. **Time**.  The Time alleged in Count Two is from 2013 to 2019.  (Doc. No. 28 at ¶ 277).  It is thus completely within the time period alleged for the Count One conspiracy, 2002 to 2020.  (*Id.* at ¶ 36).

2. **Persons Acting as Co-Conspirators.**  Count Two's participants were originally alleged to include: Jack Fisher, Kate Joy, Jim Sinnott, Terry Roberts, and Clay Weibel.  (Doc. No. 28 at ¶ 278).  Count One includes the exact same participants, but adds as co-conspirators Herb Lewis and Victor Smith.  (Doc. No. 28 at ¶ 36).  However, there was no evidence regarding Herb Lewis and Victor Smith (co-defendants who were severed) presented at trial.  Therefore, the participants for purposes of this motion are the exact same—the prosecution did not prove different participants in each conspiracy.  Moreover, the United States disclosed a list of unindicted co-conspirators, but the list is the same for both conspiracies.  *See* Fisher-1 (Doc. No. 747-1) (sealed) ("[T]he government believes the following individuals were co-conspirators in the conspiracies alleged *in Counts One and Two* of the superseding indictment . . . .") (emphasis added); Fisher-2 (Doc. No. 747-2) (sealed) (supplementing the prosecution's initial notice with additional "co-conspirators in the conspiracies alleged in *Counts One and Two* of the superseding indictment") (emphasis added).

3. **Statutory offenses charged in the indictments.**  Count Two incorporates by reference the allegations of Count One.  (Doc. No. 28 at ¶ 277).  Count One does not allege a statutory underlying offense—it charges a conspiracy to defraud the United States.  Count Two alleges wire fraud as the underlying crime.  Thus, both conspiracies are based on fraud.  In fact, the "manner and means" of Count Two is "described in paragraph 39 through 75 of [the] Superseding Indictment," incorporating the allegations of Count One.  In other words, both Counts charge the same underlying conduct.  In fact, Count Two is comprised of five total paragraphs, three of which expressly incorporate by reference the allegations of Count One.  (*Id.* at ¶¶ 277, 280, 281).  Another simply states the elements of the offense.  (Id. at ¶ 278).

4. **The overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case.** Count Two incorporates by reference the allegations of Count One. (Doc. No. 28 at ¶ 277). Count Two does not independently allege any overt acts. (*Id.* at ¶¶ 277-281). The overt acts are thus the same for both.

5. **Places where the events alleged as part of the conspiracy took place.** Count Two alleges the activities occurred in "the Northern District of Georgia and elsewhere." (Doc. No. 28 at ¶ 283). Count One alleges the same verbatim. (Doc. No. 28 at ¶ 36).

Analysis of those factors thus shows that the evidence at trial was insufficient to sustain a conviction on two different conspiracy counts. It was the same allegations that supported any conviction, and the same alleged agreement. Naturally, the jury's verdict form is filled out exactly the same on both Counts. (Doc. No. 739 at 2, 5). Judgment of acquittal should thus be entered on the second count.

## IV. THE EVIDENCE IS INSUFFICIENT TO PROVE THE VICTIM HAS BEEN DEFRAUDED OUT OF THE SPECIFIED MONEY OR PROPERTY

Mr. Fisher repeatedly sought clarification, including in a formal Motion for Bill of Particulars (Doc. No. 113 at 11-12), regarding the specific "money or property" out of which the IRS was allegedly defrauded for the wire fraud conspiracy charge, Count Two. The only "money or property" the prosecution ever pointed to was "fees or commissions," which is the money or property alleged in the Superseding Indictment. (Doc. No. 28 at ¶ 278; *see also* Doc. No 167 at 8-9).

7

Therefore, that is the only money or property of which Mr. Fisher was put on notice to defend himself. *Russell v. United States*, 369 U.S. 749, 761 (1962) (noting a defendant is entitled to know the charges against him); *see also Stirone v. United States*, 361 U.S. 212, 217 (1960) (noting a defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury").

The Supreme Court has held that wire fraud only prohibits deceptive schemes that deprive a victim of tangible or intangible money or property. *See McNally v. United States*, 483 U.S. 350, 360 (1987); *Kelly v. United States*, 140 S. Ct. 1565, 206 L.Ed.2d 882 (2020). The evidence here, however, was insufficient to prove the victim—the IRS—was defrauded out of fees or commissions. Indeed, there was no evidence (or even an allegation) the IRS was even *owed* any fees or commissions (because it was not).

In fact, there was no evidence that *anyone* was defrauded out of fees or commissions. Not a single witness testified he or she was entitled to a fee or commission and was defrauded out of that money or property. Certainly there was no evidence the IRS—the victim of the alleged scheme—was defrauded out of such money or property.[2]

---

[2] Because the IRS was the victim, the evidence must be sufficient to prove *the IRS* was defrauded out of fees or commissions. The Supreme Court has explained that while statutes like 18 U.S.C. § 371, charged in Count One, are "aimed at protecting the federal government," the mail and wire fraud statutes are not. *McNally v. United States*, 483 U.S. 350, 358-59 n. 8 (1987). Those statutes have their origins in "the

## V.   THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION THAT REQUIRES A FINDING OF FRAUD

Counts One and Two require a finding of fraud, and the evidence is insufficient to sustain a conviction that requires a finding of fraud.  At most, the evidence supports *deception*, but that is not enough—*defrauding* requires more.[3] Defrauding requires an injury to the victim, and the victim here—for both counts— is the IRS.  This law is clear in the Eleventh Circuit:

> [T]here is a difference between deceiving and defrauding: to *defraud*, one must intend to use deception to cause some injury; but one can *deceive* without intending to harm at all. Thus, deceiving is a necessary condition of defrauding but not a sufficient one. Put another way, one who defrauds always deceives, but one can deceive without defrauding. For this reason, the law in the Eleventh Circuit makes clear that a defendant "schemes to defraud" only if he schemes to deprive someone of something of value by trick, deceit, chicane, or overreaching. But <u>if a defendant does not intend to harm the victim—"to obtain, by deceptive means, something to which [the defendant] is not entitled"— then he has not intended to defraud the victim.</u>

*United States v. Takhalov*, 827 F.3d 1307, 1312-1313 (11th Cir. 2016), *as revised* (Oct. 3, 2016), *opinion modified on denial of reh'g*, 838 F.3d 1168 (emphasis added).

---

desire to protect individual property rights."  *Id.*  Therefore, "any benefit which the Government derives from the statute must be limited to the Government's interests as property holder."  *Id.*  There was no evidence the IRS, as a property holder, was defrauded out of fees or commissions.  The evidence is thus insufficient to sustain a conviction on Count Two.

[3] Arguably, there was not even deception—and certainly not fraud—because the evidence showed that Mr. Fisher provided copious information to the IRS and expected the IRS to audit the transactions at issue.

Here, the IRS has not been defrauded out of anything. The backdating allegations do not result in any loss to the United States, as proven at trial and admitted by government witnesses. (Trial. Tr. Vol. 11 (Morning) 147:3-4) (Stein Agee: "The deduction at the partnership level would have been the same.").[4]   And, as explained above, the appraisals are not inflated—or at least there was no conspiratorial agreement with Mr. Fisher to inflate them.   Therefore, under *Takhalov*, even if deception was proven, the IRS was not defrauded.

Even if there were some loss (which there was not), a link between the fraud and the loss must be proven.   Here, however, even if there were any established deception, it "was not shown to be capable of affecting the [IRS's] understanding of the [transactions]," *Takhalov*, 827 F.3d at 1314, and there was no evidence the IRS did not understand the transactions or any information provided to the IRS.   Thus, "no injury was shown to flow from [any] deception."   *Id.* (citing *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970)).   Judgment of Acquittal should thus be entered.

---

[4] As described *supra*, if a partnership was entitled to a deduction of $1,000 and had two equal partners, each would take $500—a total deduction of $1,000.   If the partnership allowed two more equal partners to join, each would deduct $250—but now there are four partners, so the total deduction would still be $1,000.   Even if those two new partners were not permitted to take the deduction, then the deduction would just be reallocated among the proper partners.   In any scenario, the deduction is always $1,000.

## VI.   THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNTS 33 THROUGH 48

Counts 33 through 48 charge Mr. Fisher with aiding and assisting in the filing of false tax returns.  However, those counts are specific to certain tax returns, all of which are U.S. Returns of Partnership Income, Forms 1065.  (Doc. No. 28 at ¶ 289).  For those returns, the only allegation of a material false statement is Schedule K, Line 13a.  (*Id.* at 71).  That line is simply a total of the charitable contributions claimed as a deduction by the partnership *at the partnership level* for that year:

| Deductions | | | | | |
|---|---|---|---|---|---|
| **12** | Section 179 deduction (attach Form 4562) . . . . . . . . . . . | **12** | |
| **13a** | Contributions . . . . . . . . . . . . . . . . . . | **13a** | |
| **b** | Investment interest expense . . . . . . . . . . . | **13b** | |
| **c** | Section 59(e)(2) expenditures:   **(1)** Type:_____   **(2)** Amount: | **13c(2)** | |
| **d** | Other deductions (see instructions)   Type:_____ | **13d** | |

There is not sufficient evidence to sustain a conviction against Mr. Fisher predicated on the allegation that line item 13a is false for any charged return because the evidence proved at trial establishes the line item is not false or, if it was, then Mr. Fisher was not aware it was false.

The only way that line could be false based on the allegations of this case is if the appraisals were fraudulently inflated.   But, as noted above, Mr. Fisher could not have willfully assisted in fraudulently inflating the appraisals because he did not know they were inflated, if they indeed were.   One appraiser, Mr. Weibel, was acquitted of inflating appraisals.  The other, Mr. Roberts, admitted that he never told Mr. Fisher his appraisals were inflated.

11

Critically, none of the backdating allegations could or would result in that line item being false.  The deduction *at the partnership level* is the same regardless of whether partners were admitted into the partnership before or after the date of the charitable contribution (or before or after the first of the year).  Stated more succinctly, even if <u>*all*</u> of the purported partners were not actual partners at the time of (and in the year of) the contribution of the easement, the value of the contribution *of the partnership* would be the same.  (Trial. Tr. Vol. 11 (Morning) 147:3-4) (Stein Agee: "The deduction at the partnership level would have been the same.").  The amount reported at Line 13a is unaffected.  Therefore, there is insufficient evidence to sustain a conviction on Counts 33 through 48.

## VII.  THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNTS 103 THROUGH 106

Counts 103 through 106 charge materially false statements on Mr. Fisher's personal returns.  Once again, the basis of these charges cannot be backdating.  The backdating allegations regard letting *other* partners into the partnership late.  There is no allegation that Mr. Fisher was not a partner at the time of the deduction.  Mr. Fisher could not have joined the partnership after the first of the year—he was charged with creating the partnerships.  (*See*, *e.g.*, Doc. No. 28 at ¶ 40(b)).  Therefore, the only way backdating could affect Mr. Fisher's returns is if he transferred some of his personal shares to a late investor (*e.g.*, as contemplated by Section 504 of the Internal Revenue Code), but that would *reduce* the deduction Mr.

Fisher took on his tax returns, resulting in a gain to the United States, instead of a loss. In other words, under that scenario, Mr. Fisher was entitled to take a larger deduction than the one he claimed on his personal tax returns.

Additionally, the theory that Mr. Fisher's share of the deduction was higher because the appraisals were inflated cannot sustain a conviction. As described above, it is impossible that Mr. Fisher willingly conspired with any appraiser to inflate appraisals. Therefore, he could not have possessed the required mental state to commit the alleged 26 U.S.C. § 7206 offenses on his own individual returns, which simply claimed his distributive share of the partnership deduction.

## VIII. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON COUNTS 122 THROUGH 135

For a number of reasons, judgment of acquittal should be entered for Counts 122 through 135, which charge money laundering.

First, as charged, the underlying crime to support the money laundering counts is wire fraud under 18 U.S.C. § 1343. The Indictment does not contain an underlying charge against Mr. Fisher for wire fraud, and the indictment provides no details regarding the wire fraud underlying the money laundering charges.[5] Mr. Fisher was

---

[5] The Indictment does charge a money laundering *conspiracy* (Count 2), but that is a crime separate from money laundering that criminalizes an agreement. Importantly, money laundering conspiracy is <u>not</u> a specified unlawful activity under the money laundering statute, as the prosecution admitted at trial. (Tr. Vol. 27 (Morning) at 4:19-23) ("Yesterday, I said 1349 was a SUA for money

not on notice as to the allegations regarding the underlying wire fraud.  In other words, what act of wire fraud supports the money laundering counts?  None was alleged in the indictment and none was proven at trial.  The underlying crime is an essential element to a money laundering charge, which the evidence cannot support in this instance.  For that reason alone, judgment of acquittal is appropriate for the money laundering charges.

Second, the prosecution sought to establish that every dollar invested into the partnerships was the proceeds of wire fraud.[6]  But there was not even an allegation of wire fraud that occurred prior to the investors investing in the partnerships.  No link was made between the money invested and proceeds of wire fraud.[7]  The evidence that investor money was the proceeds of wire fraud was insufficient to sustain a conviction.

---

laundering. . . . And it is, but only to healthcare fraud, which is not charged in this case, so . . . .").

[6] This argument was made at trial and advanced by prosecution witnesses.  It does not appear in the Indictment and Mr. Fisher was not on notice regarding this allegation.

[7] In reality, no link was made between that money and the proceeds of *any* crime.  The prosecution never put Mr. Fisher on notice that it considered all investors to be co-conspirators, nor did it charge as much or prove as much at trial.  *See* Exhibits Fisher-1 (Doc. No. 747-1) (under seal); Fisher-2 (Doc. No. 747-2) (under seal) (lists provided by the prosecution of the alleged unindicted coconspirators).

Not only is the evidence insufficient that every dollar of investor funds was the proceeds of wire fraud, but the evidence showed that some investors invested into the partnership and voted for the development option.  While the prosecution did not call any investors (other than Mr. Herman, who was not called as an investor, but as a landowner), Mr. Fisher put on evidence through Mr. Comerford that for one partnership, Mr. Comerford voted to have the partnership engage in development and *not* donate a conservation easement.  (Trial Tr. 124:10) ("I voted to develop."). His investment in that partnership could not be wire fraud—his intention was to use it for development, a purpose for which there is not even an allegation of fraud.

Lastly, the investor money did not become the proceeds of wire fraud simply by being accepted by the partnerships.  At the time the investment is made, no allegedly illegal activity had occurred.  And, from that point forward, not every dollar was spent on the crimes alleged.  The evidence showed that money was used for a variety of purposes, including buying land that was *not* the subject of a conservation easement, paying property taxes, and hiring professionals (such as lawyers, land planners, engineers, market studies, accountants, etc.).

Simply put, the evidence is not sufficient to find the proceeds of the funds subject to the money laundering counts derived from wire fraud.  Judgment of acquittal should be entered on those counts.

## IX.   THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON FORFEITURE

Some of the forfeiture counts derive from Count 2 (Conspiracy to Commit Wire Fraud), while others derive from Counts 122 through 135 (money laundering). *See* (Doc. No. 740) (forfeiture verdict form).[8]

For those derived from Count 2, there was not sufficient evidence that the forfeited assets derived from fees and commissions.  Instead, the prosecution argued every dollar invested into the partnerships at issue was the proceeds of illegal activity.  (Trial Tr. Vol. 46 (Afternoon) (67:17-18) (Agent Nguyen: "I understood that the participant funding was considered dirty money."); (*id.* at 105:8-12) ("When we talk about those participant funds, all those funds go through those flowcharts that came from all the people that were involved, the participants in the fraud scheme, all of that money is proceeds.  So that's subject to forfeiture.");[9] *see also* (*id.* 39:10-19); (*id.* at 43:7-8); (*id.* at 44:13-15); (*id.* at 45:8-16); (*id.* at 50:12-17); (*id.* at 66:2-9); (*id.* 67:22-25); (*id.* 68:8-16); (*id.* at 69:7-21).  Investor money,

---

[8] Judgment of acquittal should be entered on the forfeiture counts for the same reason judgment of acquittal should be entered for the underlying counts, as discussed above.

[9] Although the prosecution disclosed a list of unindicted co-conspirators, it never disclosed that all investors were co-conspirators, nor did it charge as much or prove as much at trial.  *See* Exhibits Fisher-1 (Doc. No. 747-1) (under seal); Fisher-2 (Doc. No. 747-2) (under seal) (submitted for the record).  There is thus insufficient evidence to support a conviction on a theory that every dollar of investor funds were proceeds of a crime.

however, is not the subject of Count Two; fees and commissions are. There was no evidence that any fees and commissions were used to purchase any of the assets derived from Count Two. The complete lack of evidence in this regard requires judgment of acquittal as to those counts. (*See* Doc. No. 740) (verdict form showing which assets are alleged to trace back to Count Two).

For the money laundering counts, the forfeited assets had to derive from wire fraud. Yet, there was no evidence during the forfeiture trial that the source of funds for any asset was wire fraud. Indeed, the prosecution did not even attempt to prove the forfeited assets were purchased with proceeds of wire fraud, and instead attempted to prove that every dollar of investor money was "dirty money." There was insufficient evidence to conclude the forfeited assets were from the proceeds of money laundering as the result of underlying wire fraud.

What is more, the prosecution collapsed the analysis to reach a conviction on money laundering with that to reach a conviction on forfeiture. (*See*, *e.g.*, Trial Tr. Vol. 46 (Afternoon) 104:13-105:3). If that were permissible, there would be no need for the forfeiture trial in the first place. That lack of evidence should result in judgment of acquittal.

## X.   THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION ON ECONOMIC SUBSTANCE

Whether the economic substance doctrine applies to a series of transactions is a question of law for the Court. *Am. Int'l Grp., Inc. v. United States*, No. 09-CIV-

1871, 2013 WL 7121184, *2 (S.D.N.Y. Nov. 5, 2013) ("Whether the economic substance doctrine applies is a question of law.").   Here, the Court found, over Mr. Fisher's objection, that the doctrine does apply.  (Trial Tr. Vol. 38 (Morning) 127:8-17) ("I have reached that conclusion, and I understand that all three of the defendants take exception to that ruling.").  The question of whether the transactions alleged in the Indictment had economic substance was thus submitted to the jury.

The evidence at trial, however, was not sufficient to show that the transactions here lacked economic substance.  In each transaction, land was purchased and an easement over land (or the land itself) was donated to charity.  While that is enough, the transactions here had even more economic substance—the partnerships would retain land without an easement on it for future development or to hold until the land increased in value.   Even the prosecution's own witnesses admitted there was economic substance to the transactions at issue.  For example, Mr. Herman testified:

> Q. There is no question there is economic substance to these transactions that the buyers, they may be motivated because they want that instant gratification of a tax deduction for the easement, but they still own the property; right?
> A. Absolutely.
>
> Q. And they still own the residual land; right?
> A. That's correct.
>
> Q. So there is plenty of economic substance to this transaction; am I right?
> A. Correct.

(Trial Tr. Vol. 13 (Morning) 137:2-11).  Therefore, even if economic substance were required (as the Court held), there was insufficient evidence to show it was lacking in the alleged transactions.   Indeed, many courts have found under similar circumstances that economic substance is present in the donation of a charitable contribution.  *See*, *e.g.*, *Cross Refined Coal, LLC v. Comm'r*, 45 F.4th 150, 158 (D.C. Cir. 2022); *Summa Holdings, Inc. v. Comm'r of Internal Revenue*, 848 F.3d 779 (6th Cir. 2017); *RERI Holdings I, LLC v. Comm'r of Internal Revenue*, 107 T.C.M. (CCH) 1488 (2014); *Sacks v. Comm'r*, 69 F.3d 982, 991 (9th Cir. 1995); *Hunter v. Comm'r of Internal Revenue*, 51 T.C.M. (CCH) 1533 (1986); *Skripak v. Comm'r*, 84 T.C. 285, 315, 391 (1985).

At trial, the prosecution argued that while the donation to charity has economic substance, the formation of the partnership does not.  But if one step in the transaction (the donation charity) has economic substance—or economic substance is not necessary—then every step (including formation of the partnership) has economic substance.  The jury thus returned a legally impossible verdict on application of the facts presented at trial.

For example, in *Weitz v. Comm'r*, 56 T.C.M. (CCH) 1422 (1989), the taxpayer pooled investors into funds to purchase hospital supplies at a discount at bankruptcy auctions. The supplies were then stored by the hospital for a year and a day, then title passed to the hospital, and the investors received a tax deduction "at a ratio of

four dollars of deduction for each dollar of investment capital." *Id.* The IRS claimed a lack of economic substance as to the "various transactions." *Id.* The Tax Court disagreed, noting it "must consider whether *the entire series of transactions* lacked economic substance," *id.* (emphasis added)—including the pooling of investors into funds. The court found the series of transactions did not lack economic substance because the "*entire transaction* [was] within the requirements of the definition of a deductible charitable contribution of appreciated property." *Id.* (emphasis added).

Similarly, in *Weintrob v. Comm'r*, 60 T.C.M. (CCH) 895 (1990), investors were pooled to buy land and donate finished gravesites to charity at a fair market value above their purchase price. The IRS contested the economic substance of the transactions, arguing that "the ultimate purpose and the only purpose of the *series of transactions* was to obtain tax benefits for the investors." *Id.* (emphasis added) The Tax Court disagreed:

> In the instant case, it is clear that, from the outset, all of the parties in interest intended that the finished gravesites would be donated by petitioners to charities . . . and this is precisely what happened. . . . [The IRS] argues that the ultimate and only purpose of the series of transactions was to obtain tax benefits for the investors. In *Skripak v. Commissioner*, *supra*, we rejected a similar challenge by respondent to a charitable contribution through which the taxpayers purchased and donated scholarly reprinted books. . . . In the present case, petitioners parted with their own funds as a result of which the various qualified charitable organizations received finished gravesites. Such being the case, petitioners made substantive donations for which they are entitled to deductions.

*Weintrob*, 60 T.C.M. (CCH) at 895 (emphasis added).[10]  In both of those cases, there was a formation of a partnership just as there was here.   Yet, in both cases the Tax Court found economic substance to the formation of those partnerships because the partnerships made a contribution to charity.

Here, the evidence is clear that land was purchased, land (or an interest in land) was donated, and land was held for investment.   The evidence is thus insufficient to sustain a conviction on the basis of the economic substance doctrine.

## CONCLUSION

For the reasons stated herein, judgment of acquittal should be entered on all counts charged as to Mr. Fisher.

---

[10] Even the IRS, in a formal notice, has noted that for purposes of deciding whether economic substance is required, a transaction "includes all of the steps taken together":

> For purposes of determining whether the codified economic substance doctrine applies, "transaction" generally includes all the factual elements relevant to the expected tax treatment of any investment, entity, plan, or arrangement; and <u>any or all of the steps that are carried out as part of a plan</u>.  Facts and circumstances determine whether a plan's steps are aggregated or disaggregated when defining a transaction.  <u>Generally, when a plan that generated a tax benefit involves a series of interconnected steps with a common objective, the "transaction" includes all of the steps taken together</u> – an aggregation approach.  This means that <u>every step in the series will be considered when analyzing whether the "transaction" as a whole lacks economic substance</u>.

IRS Notice 2014-58, *available at* https://www.irs.gov/pub/irs-drop/n-14-58.pdf.[10]

Respectfully submitted this the 4th day of October, 2023,

/s/ *Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141
Brett.Switzer@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363-1017
Tel: (404) 872-7000

Russ Ferguson* (N.C. Bar No. 39671)
Russ.Ferguson@wbd-us.com
Claire J. Rauscher*  (N.C. Bar No. 21500)
Claire.Rauscher@wbd-us.com
Michael A. Ingersoll* (N.C. Bar No. 52217)
Mike.Ingersoll@wbd-us.com
301 S. College Street, Suite 3500
Charlotte, NC 28202
Tel: (704) 331-4920

Luke Cass* (DC Bar No. 491706)
Luke.Cass@wbd-us.com
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Tel: (202) 857-4426

M. Rhett DeHart*
5 Exchange St
Charleston, SC 29401
Tel: (843) 722-3400
Email: Rhett.DeHart@wbd-us.com

* *Admitted Pro Hac Vice*
*Attorneys for Defendant Jack Fisher*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing complies with the font and point selections approved by the court pursuant to new L.R. 5.1B (eff. 9/7/2023) and 7.1D of the Northern District of Georgia. The foregoing filing was prepared on a computer using 14-point Times New Roman font.

This 4th day of October, 2023,

 *s/ Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141

*Attorney for Defendant Jack Fisher*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 4th day of October, 2023,

*s/ Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141

*Attorney for Defendant Jack Fisher*