IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACK FISHER,<br>    Defendant,<br><br>and<br><br>JENNIFER BUNTIN and<br>MICHAEL BUNTIN,<br>    Third-Party Claimants. | CRIMINAL ACTION NO.<br><br>1:21-cr-231-TCB-CMS<br><br>**[Ancillary Proceedings]** |

## REPORT AND RECOMMENDATION

Jack Fisher's daughter, Jennifer Buntin, and her husband, Michael Buntin, have filed a petition pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c), asserting an interest in certain property included in this Court's preliminary forfeiture order, specifically: (1) real property located at 12595 Etris Road, Roswell, Georgia 30075 ("the House"); and (2) a 2018 Mercedes Benz model GLS 550 4matic ("the SUV") (collectively "the Property"). [Doc. 773]. Claiming that "[t]he Government is improperly attempting to take [their] home and car," the Buntins raise a variety of arguments in an attempt to stop the forfeiture of the Property. [*Id.*]. On December 27, 2023, the Government filed a motion to dismiss

the petition pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A). [Doc. 828]. The Buntins filed a brief in response to the motion to dismiss. [Doc. 850]. The Government did not file a reply.

For the reasons set forth below, I will recommend that the district judge grant in part and deny in part the motion to dismiss.

## I.   PROCEDURAL BACKGROUND

On February 24, 2022, a Grand Jury sitting in the Northern District of Georgia returned a 135-count First Superseding Indictment against Jack Fisher and others, charging Fisher with, among other things, conspiracy to commit wire fraud and money laundering based on the purchase of real estate and luxury items using proceeds generated from the wire fraud conspiracy.[1] [Doc. 28]. The First Superseding Indictment included a forfeiture provision that identified the House as being subject to forfeiture based on both the wire fraud charge and the money laundering charges. [*Id.* at 95–96]. Four months later, the Government filed a Bill

---

[1] Fisher was also charged with being part of a conspiracy to defraud the United States, as well as multiple counts of aiding and assisting the filing of false tax returns and subscribing to false tax returns. [Doc. 28].

2

of Particulars identifying the SUV as additional property subject to forfeiture. [Doc. 191 at 1].

Fisher maintained his plea of not guilty and went to trial. On September 22, 2023, a jury found him guilty on all counts. [Docs. 735, 739]. Pursuant to Fisher's request, the jury was retained to hear the forfeiture evidence. It returned a special verdict, finding that the Government had shown the requisite nexus between all of the property for which the Government sought forfeiture and the corresponding charged crimes. [Doc. 740]. As relevant here, the jury found by a preponderance of the evidence that:

- the House (other than $20,842.65 of untainted funds) constituted or was derived from proceeds traceable to the wire fraud offense charged in Count 2 [Doc. 740 ¶ 1(e)];

- the House was involved in or traceable to the money laundering offense charged in Count 129 [*id.* ¶ 9(a)];

- the SUV constituted or was derived from proceeds traceable to the wire fraud offense charged in Count 2 [*id.* ¶ 1(k)]; and

- the SUV was involved in or traceable to the money laundering offense charged in Count 125 [*id.* ¶ 5(a)].

Thus, the jury found that both the House and the SUV were subject to forfeiture for two different reasons: (1) they constituted (or were derived from) proceeds traceable

3

to the wire fraud conspiracy in Count 2; and (2) they were involved in (or were traceable to) the charged money laundering offenses in Counts 125 and 129.

On October 17, 2023, the Court issued a preliminary forfeiture order directing the forfeiture of, among other things, the Property. [Doc. 753]. Thereafter, pursuant to 21 U.S.C. § 853(n)(1), the Government posted notice of forfeiture on www.forfeiture.gov and sent direct notice to potential third-party claimants, including the Buntins. On November 16, 2023, the Buntins timely filed the instant verified petition regarding the Property. [Doc. 773]. On December 27, 2023, the Government responded to the Buntins' petition by moving to dismiss it. [Doc. 828].

**II.   THE SCOPE OF ANCILLARY PROCEEDINGS AND LEGAL STANDARD FOR A MOTION TO DISMISS**

Title 21, Section 853 governs criminal forfeiture proceedings and provides that persons convicted of certain criminal violations shall forfeit to the United States any property used to commit or facilitate the crime, or any property "constituting, or derived from, any proceeds the person obtained" from the crime. 21 U.S.C. § 853(a)(1)–(2). Under the statute, "[a]ll right, title, and interest" in the forfeited property "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c).

Section 853(n) establishes a procedure for third parties who claim an interest in forfeited property to avoid its forfeiture. 21 U.S.C. § 853(n). Such parties may "petition the [district] court for a hearing to adjudicate the validity of [their] alleged interest in the property." *Id.* § 853(n)(2). The statute establishes the following standard by which third-party interests are adjudicated:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

*Id.* § 853(n)(6). If the petitioner can make the requisite showing under either the "superior interest" prong or the "bona fide purchaser" prong, then the order of forfeiture is invalid. *Id.* § 853(n)(6)(A).

5

If a petitioner fails to plausibly allege in the petition that one of the two situations described in § 853(n)(6) applies, the petition should be dismissed under Federal Rule of Criminal Procedure 32.2(c)(1)(A). Courts are authorized to dismiss a third-party petition "for lack of standing, for failure to state a claim, or for any other lawful reason." FED. R. CRIM. P. 32.2(c)(1)(A). For purposes of such a motion, the facts set forth in the petition are assumed to be true. *Id.* Prior to discovery or a hearing, a motion to dismiss a petition should be treated like a motion to dismiss a civil complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Marion*, 562 F.3d 1330, 1342 (11th Cir. 2009).[2]

### III.   FACTS ALLEGED IN THE PETITION

The Buntins state in their petition that they acquired the House on August 13, 2018, and that it is their family homestead. [Doc. 773 at 2–3]. They have attached to their petition the Purchase and Sale Agreement dated July 30, 2018, which lists them as the buyers (Exhibit A), the Settlement Statement dated August 10, 2018,

---

[2] Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam).

showing them as the buyers (Exhibit B), and the Limited Warranty Deed with them listed as the grantees (Exhibit C).  [Doc. 773-1; Doc. 773-2; Doc. 773-3].  These documents reflect that the Buntins own the House as joint tenants with a right of survivorship.  The Buntins state that they pay property taxes and insurance on the House and have made improvements to it.  [Doc. 773 at 3].  The petition states that the funds used to purchase the House came from the account of The Preserve Communities, LLC ("The Preserve").  [Doc. 773 at 3].  The Preserve issued two wire transfers, one for $50,000 on July 31, 2018, and one for $819,798.50 on August 9, 2018, that were used to purchase the House.[3]  [*Id.*].

The Buntins state in their petition that Jennifer Buntin acquired the SUV on February 28, 2018, using funds from The Preserve via a check for $101,970.94 dated January 24, 2018.  [Doc. 773 at 3].  They attach the Georgia Certificate of Title showing that the SUV was titled in Jennifer Buntin's name (Exhibit D).  [Doc. 773-4].

---

[3] In their brief, the Buntins have made what appears to be a typographical error, referring to these events as having occurred in 2019.  I have assumed that they intended to refer to the year 2018.  [Doc. 773 at 3].

7

The petition goes on to present the following facts in support of the Buntins' contention that they should be awarded the Property:

> Jennifer Buntin is the daughter of Jack Fisher.  Long before any criminal conduct occurred, on August 26, 2007, the 2007 Fisher Family Trust ("FFT") was created and funded with some assets.  The original beneficiaries of the FFT were Jennifer Buntin, her sister Christina Fisher, and her brother James Fisher.  James Fisher passed away, leaving Jennifer Buntin and Christina Fisher as the remaining beneficiaries.  A copy of the FFT is attached as Exhibit E.
>
> On or about the Fall of 2017, the FFT transferred significant assets, including real property, to the Peregrine Trust.  In exchange for the transfer of assets, the Peregrine Trust executed an $11.5 million Promissory Note in favor of the FFT on or about November 30, 2017.  A copy of this Promissory Note is attached as Exhibit F.  Jennifer Buntin is one of four beneficiaries of the Peregrine Trust.  A copy of the Peregrine Trust is attached as Exhibit G.
>
> The Peregrine Trust periodically made payments to the FFT to repay the Promissory Note.  Each time a payment was made, the value of the Promissory Note decreased.  When the [House] and SUV were purchased by Preserve, a subsidiary of the Peregrine Trust, payments were credited to pay back to the FFT for the benefit of Ms. Buntin's acquisition of the [House] and SUV.  The value of the Promissory Note was reduced in proportion to these payments.  Accounting records reflecting paydowns of the Peregrine Promissory Note are attached as Exhibit H.

[Doc. 773 at 5–6].

## IV.   DISCUSSION

As set forth above, there are only two classes of third parties who can participate in an ancillary proceeding to obtain relief from a criminal forfeiture

8

order—those whose legal interests in the property were superior to the legal interests of the defendant at the time of an act giving rise to the forfeiture and "bona fide purchasers for value" without knowledge of the forfeitability of the defendant's assets. 21 U.S.C. § 853(n)(6). Here, the Buntins seek relief under both the "superior legal interest" prong of § 853(n)(6)(A) and the "bona fide purchaser for value" prong of § 853(n)(6)(B).[4] I will address the prongs in turn.

### A. The Buntins have not stated a claim under § 853(n)(6)(A).

The Buntins argue that they are entitled to relief under 21 U.S.C. § 853(n)(6)(A) because their interests in the Property were superior to those of Fisher. [Doc. 773 at 2–3]. To obtain relief under § 853(n)(6)(A), the Buntins must establish that: (1) they had a legal interest in the Property; and (2) their interest was

---

[4] The Buntins also make several arguments challenging the forfeiture itself. For example, they contend that only 25% of the Property should have been forfeited because Fisher had only a quarter interest in the Peregrine Trust and that a different accounting method would show that the Property was purchased with "clean" money. [Doc. 773 at 6–10]. These arguments are outside the scope of ancillary proceedings, which exist "to determine whether a third party has an interest in the property that the defendant has already forfeited—not to relitigate the preliminary order's finding of forfeitability." *United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019); FED. R. CRIM. P. 32.2, advisory committee note (2000) (stating that ancillary proceedings "involve simple questions of ownership."). The Government's motion to dismiss should be granted as to these arguments.

superior to Fisher's interest in the Property at the time of both the conspiracy charged in Count 2 and the money laundering activities charged in Counts 125 and 129. *See United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008).

The relevant time period for analyzing the relative rights of the petitioners and the defendant is when the defendant commits the act giving rise to the forfeiture. *See* 21 U.S.C. § 853(c). In their petition, the Buntins assert that Jennifer Buntin acquired the SUV on **February 28, 2018** and acquired the House on **August 13, 2018**. [Doc. 773 at 2–3]. As explained below, the Buntins' claim under § 853(n)(6)(A) fails because they have not alleged facts showing that their interest in the Property was superior to Fisher's at the time the conspiracy began.

In Count 2 of the First Superseding Indictment, Paragraph 278 alleges that "[f]rom at least in or about 2013 through at least in or about 2019," Fisher engaged in a wire fraud conspiracy. [Doc. 28 ¶ 278]. The jury found Fisher guilty of Count 2, and it also found that both the House and the SUV were subject to forfeiture because they constituted or were derived from proceeds traceable to that conspiracy. [Doc. 735; Doc. 739; Doc. 740 ¶ 1(e), (k)]. I conclude that the relevant time period for this inquiry—i.e., "the time of the commission of the acts which gave rise to the forfeiture of the property"—is in 2013, when the jury found the wire fraud conspiracy began. Of course, 2013 is long before the Buntins acquired the Property

in 2018. In the absence of any claim to a legal interest in the Property before 2013, the Buntins have failed to state a claim under § 853(n)(6)(A).

The factual allegations in the petition, accepted as true, show that the Buntins did not obtain their interests in the Property until after the wire fraud conspiracy began. Accordingly, 21 U.S.C. § 853(n)(6)(A) does not provide a basis to allow the Buntins to claim the Property in this ancillary proceeding. *See United States v. Watkins*, 320 F.3d 1279, 1282 (11th Cir. 2003) (finding that petitioners were not entitled to recover property that was transferred after the conclusion of the conspiracy); *United States v. Davis*, No. 02-21023-CR-GOLD/Simonton, 2007 WL 1362614, at *6 (S.D. Fla. May 7, 2007) (ruling that a third-party owner of a boat did not have a claim under § 853(n)(6)(A) because the fraud occurred before the boat was purchased). The Government's motion to dismiss should be granted on this claim.[5]

---

[5] Additionally, it appears that the money laundering activities that resulted in the purchase of both the House and the SUV also occurred before the Buntins obtained their interest in the Property. Fisher was convicted of money laundering in Count 129 of the First Superseding Indictment, which alleged an illegal transfer in the amount of $819,798.50 for the purchase of the House. [Doc. 28 ¶ 310, Count 129; Doc. 735; Doc. 739]. Although the date in the First Superseding Indictment is listed as "October 9, 2018," the Government states that the evidence at trial showed that this illegal wire transfer occurred on August 9, 2018, four days **before** the date the Buntins claim they acquired the House. [Doc. 828 at 6; Doc. 773 at 2]. And

**B.     The Buntins have stated a claim under § 853(n)(6)(B).**

The Buntins next argue that they are entitled to relief under 21 U.S.C. § 853(n)(6)(B) because they are bona fide purchasers for value. They claim that Jennifer Buntin gave value, in the form of reducing a promissory note, for both the House and the SUV. The petition states that the agreement to reduce the promissory note in exchange for the purchase of the House and SUV was an arms-length transaction in which both sides gave equivalent value.

Both parties provide evidence and evidence-based arguments on this issue, which I have not considered in ruling on the Government's motion to dismiss. I conclude that accepting the assertions in the petition as true, the Buntins have stated sufficient facts to plausibly allege a claim under § 853(n)(6)(B). I therefore recommend that the motion to dismiss be denied as to the Buntins' bona fide purchaser for value claim.

---

with respect to the SUV, Fisher was convicted of Count 125 of the First Superseding Indictment, which alleged a money laundering violation based on a January 24, 2018 check to a car dealer to buy the SUV. [Doc. 28 ¶ 310, Count 125; Doc. 735; Doc. 739]. In their petition, the Buntins admit that the SUV was acquired using funds from The Preserve via a check for $101,970.94 dated January 24, 2018. [Doc. 773 at 3]. Thus, the act giving rise to the Count 125 money laundering charge occurred more than a month ***before*** February 28, 2018, the date the petition alleges Jennifer Buntin acquired the SUV. [Doc. 828 at 6; Doc. 773 at 3].

## V. CONCLUSION

For the reasons stated, I **RECOMMEND** that the Government's motion to dismiss the petition [Doc. 828] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, I recommend that all claims in the petition [Doc. 773] be dismissed other than the claim under § 853(n)(6)(B), i.e., that the Buntins are bona fide purchasers for value of both the House and the SUV.

After the district judge reviews this Report and Recommendation and makes a final ruling on the Government's motion to dismiss, I will set a status conference to discuss next steps in the case.

This 6th day of May, 2024.

_Catherine Salinas_
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE